STATE OF NORTH CAROLINA v. HENRY AARON TATUM

No. 4

(Filed 4 November 1976)

1. **Bill of Discovery § 1— discovery in criminal cases**

   There is no common-law right of discovery in criminal cases.

2. **Constitutional Law § 31; Criminal Law § 80— motion for discovery of officers' notes**

   The denial of defendant's motion in a homicide case for discovery of "the original notes of the arresting officers" pertaining to the house where the homicide occurred did not constitute a violation of defendant's right to due process, although the house was demolished subsequent to the crime, since defendant failed to meet the "favorable character" and "materiality" tests of *Brady v. Maryland,* 373 U.S. 83, and since defendant is not entitled to a detailed accounting of all police investigatory work on the case.

3. **Criminal Law § 80— inspection of police officers' notes — no statutory right**

   Defendant had no right under G.S. 15-155.4 to inspect notes of the investigating police officers pertaining to the house where the crime occurred where the notes were not specifically identified and were not exhibits to be used in the trial.

4. **Constitutional Law § 31— appointment of expert for indigent defendant — discretion of court — private investigator**

   Whether an expert should be appointed at State expense to assist an indigent defendant rests within the sound discretion of the trial judge; however, the appointment of a private investigator should be made with caution and only upon a clear showing that specific evidence is reasonably available and necessary for a proper defense. G.S. 7A-450; G.S. 7A-454.

5. **Constitutional Law §§ 31, 32— refusal to appoint investigator for indigent defendant — due process — effective assistance of counsel**

   An indigent defendant's rights to due process and the effective assistance of counsel were not violated by the trial court's denial of defendant's motion that the State provide funds for the employment of a private investigator where defense counsel made no showing as to the reasonable availability of any evidence necessary for a proper defense, defendant had the benefit of a favorable discovery order, and defendant's testimony shows that he was aware of all persons who could shed light on the happenings in question.

6. **Constitutional Law § 31— refusal to appoint investigator for indigent defendant — equal protection**

   The denial of an indigent defendant's request for a private investigator at State expense did not violate his right of equal protection since the mere refusal to provide defendant with an additional

defense tool which is available to wealthier persons accused of crime does not amount to a denial of equal protection.

7. **Constitutional Law § 31— refusal to appoint investigator for indigent defendant — equal protection**

The denial of the request of an indigent defendant represented by court-appointed counsel for a private investigator at State expense did not constitute a violation of equal protection because defendants represented by a public defender have an investigator available to them pursuant to G.S. 7A-468 since (1) the statute places the services of an investigator at the disposal of a public defender to be used by him whenever, in his discretion, a particular case indicates a need therefor, (2) the trial judge has discretion under G.S. 7A-450 and G.S. 7A-454 to provide an investigator to a defendant represented by court-appointed counsel, and (3) indigent defendants in both instances must therefore make a showing of need sufficient to convince a public official, in the exercise of his discretion, that the services of an investigator are necessary to a fundamentally fair trial.

8. **Jury § 5— juror acquainted with brother of State's witness, police officers — challenge for cause**

The trial court in a homicide prosecution did not err in the denial of defendant's challenge for cause of a juror who stated that he worked with the brother of the State's chief witness, he was friendly with several police officers and he felt uncomfortable about serving on the jury, where the juror also stated that he had formed no opinion about the case, he did not know defendant or the State's witness, and his acquaintance with the witness's brother and with police officers would not prevent him from basing his verdict solely on the evidence presented at trial and the applicable law. G.S. 9-14.

9. **Criminal Law § 98— motion to sequester witnesses — testimony by witnesses not sequestered — lack of knowledge witnesses would testify**

The trial court did not err in admitting testimony of two State's witnesses who testified in corroboration of the chief prosecution witness under the following circumstances: (1) the witnesses were in the courtroom when the chief prosecution witness testified; (2) prior to the chief prosecution witness's testimony the court had ordered that the chief prosecution witness be sequestered and that police officers and technical witnesses be not sequestered; (3) at the time of this ruling, neither the trial judge, defense attorney nor district attorney knew the two witnesses would be called; and (4) the trial judge gave defense counsel time to prepare for cross-examination when he objected to this testimony upon the principal ground that he was not prepared to cross-examine the witnesses.

10. **Criminal Law § 87; Witnesses § 1— list of State's witnesses**

Neither statute nor common law requires the State to furnish a defendant with the names and addresses of all the witnesses the State intends to call. G.S. 15A-903.

11. **Criminal Law § 98— sequestration of witnesses — discretion of court**

The sequestration of witnesses is a matter within the trial judge's discretion, and his ruling thereon is not reviewable absent a showing of abuse of that discretion.

**12. Jury § 7; Constitutional Law § 29— peremptory challenge of blacks — no systematic exclusion**

Defendant failed to make out a *prima facie* case of arbitrary or systematic exclusion of male blacks from the jury by showing only that the district attorney excluded all male blacks from the jury by use of peremptory challenges.

**13. Homicide § 12— indictment for murder — conviction under theories of premeditation and deliberation, felony-murder**

A bill of indictment for first degree murder drawn in the form prescribed by G.S. 15-144 was sufficient to support a verdict of guilty of first degree murder if the jury found beyond a reasonable doubt that defendant killed deceased with malice and after premeditation and deliberation or in the perpetration of a robbery or a kidnapping.

**14. Criminal Law § 26; Homicide § 31— kidnapping not basis for felony-murder — punishment for kidnapping and murder**

Although a homicide and a kidnapping were parts of one continuous transaction, defendant could properly be convicted of both first degree murder and kidnapping and punished for both crimes where the offense of first degree murder was submitted to the jury only on theories of premeditation and deliberation and commission in the perpetration of a robbery, and the offense of kidnapping was submitted to the jury as a separate and distinct offense and not as a basis for a possible finding by the jury that deceased was killed during the perpetration of the felony of kidnapping.

**15. Homicide § 31— death sentence vacated — imposition of life imprisonment**

Sentence of death imposed for first degree murder is vacated and sentence of life imprisonment is substituted therefor.

APPEAL by defendant from *Albright, J.,* 24 March 1975 Special Session, DURHAM Superior Court.

Defendant was charged in separate bills of indictment with the crimes of kidnapping, armed robbery and first-degree murder. The cases were consolidated for trial and defendant, through his court-appointed counsel William M. Sheffield, entered a plea of not guilty to each charge.

The State offered the testimony of Kenneth Earl Blake who, in substance, testified that on the night of 20 July 1974, he and defendant saw Howard Ellis at about 10:45 p.m. near North Durham Five Points. Ellis, an acquaintance of defendant, was a security guard. Defendant and Blake entered Ellis' automobile. Defendant sat in the front seat and talked to Ellis while Blake sat in the back seat and smoked a cigarette. After a short time defendant and Blake went to the Duke Tavern where they had some beer. They left the tavern some time after

midnight and defendant flagged Ellis down near Carpenter Motors in Durham. When Ellis stopped the car defendant pulled out a .38 caliber pistol, ordered Ellis out of the car and took his pistol. He gave the pistol to Blake and upon defendant's instructions both Ellis and Blake entered the rear of the automobile. Defendant then drove to a deserted house on Scoggins Street where, after ordering Ellis out of the car, he took the officer's handcuffs and handcuffed his hands behind his back. In response to defendant's questions, Ellis stated that the only money he had was a $100 check in the back of the car. Thereupon defendant took a box containing green bags from the trunk of the car and placed it on the back seat. Blake found a check in the box. Defendant then took Ellis into the house and shortly thereafter Blake heard four shots. Defendant came out of the house alone and drove Ellis' automobile to the corner of Gary and Liberty Streets where he and Blake removed a shotgun, a nightstick, a flashlight, shotgun shells and bullets. They left on foot and returned to defendant's home where they found Willie Laney and George Cleveland who had been with them earlier that night. The four of them went to the location where the property was hidden and picked up the guns, ammunition and other property. A few days later, in response to questions by Officers Roop and Rigsbee, Blake related the happenings of 20 July 1974.

On cross-examination, Blake admitted to defense counsel that he had previously told him that the district attorney had assured him that if he presented false testimony against defendant Tatum he would be paid certain sums of money, charges would not be brought against him and he would not have to spend any time in jail. He further admitted that he told defense counsel that he testified for the State at the preliminary hearing because of these promises.

The State offered further testimony of police officers to the effect that the body of Howard Ellis was found on 22 July 1974 at a house on Scoggins Street. He was lying on his back with handcuffs on his wrists and there were four bullet wounds in his head.

George Cleveland and Willie Laney testified that they were in the presence of defendant and Kenneth Earl Blake in the early part of the night of 20 July 1974 and at that time defendant was armed with a pistol. Both of these witnesses saw defendant and Blake enter the automobile of deceased and sit

there for about five minutes. After midnight they accompanied defendant and Blake to the place where they picked up a shotgun, blackjack and some ammunition. They all returned to defendant's home and Blake told them about the shooting and the taking of the property. Their testimony generally corroborated Blake's account of the shooting and theft.

The State also offered evidence tending to show that defendant's fingerprints and Blake's fingerprints were taken from the Ellis automobile. There was medical testimony tending to show that Ellis died as a result of the gunshot wounds to his head.

Defendant testified that he was with Blake, Cleveland and Laney during the early hours of 20 July 1974 and after having a beer with Blake he gave his .38 pistol to Blake and went home. Blake came to his home later that night and asked defendant to go with him. They went to an old house at the corner of Liberty and Gary Streets where Blake removed a shotgun, nightstick and a pistol from nearby bushes and placed them in defendant's car. This property was left in defendant's home for some time. Blake refused to tell him where he had obtained these articles. Defendant testified that he did not commit any of the crimes for which he was being tried.

The jury returned a verdict of guilty as to each charge and defendant was sentenced to death on the verdict of guilty of murder in the first degree. A sentence of imprisonment for 99 years was imposed on the verdict of guilty of kidnapping. The trial judge allowed defendant's motion for arrest of judgment on the charge of armed robbery. Defendant appealed from the judgments entered.

*Attorney General Edmisten, by Associate Attorney Jack Cozort for the State.*

*William M. Sheffield, by John F. Hester, attorney for defendant appellant.*

BRANCH, Justice.

Defendant assigns as error the trial judge's ruling on his pre-trial motion for discovery.

Prior to the appointment of defendant's counsel the Durham Redevelopment Commission demolished the house on Scog-

gins Street in which the body of Howard Ellis was found. Defendant contends that, in light of this development, he should have been allowed to discover and inspect photographs taken at the scene, physical evidence taken therefrom, and notes of police investigators pertaining to the house. An examination of defendant's motion for discovery reveals that these items fall within the following requests:

3. The original notes of the arresting officers.

\*    \*    \*

11. Any and all photographs or other evidence concerning or depicting the situs of the commission of the crimes alleged herein, ballistics tests arising therefrom, fingerprints therein taken, blood and other stains noted or tested, documents, papers (including checks), handcuffs, weapons, or any other tangible things which are evidentiary or which are relevant or material to the case for the defense or for the State.

[1]   There is no common-law right of discovery in criminal cases. *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664; *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, *cert. denied,* 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884. The discovery statute in effect at the time of this trial was G.S. 15-155.4, which, in pertinent part, provided:

In all criminal cases before the superior court, the superior court judge . . . shall for good cause shown, direct the solicitor or other counsel for the state to produce for inspection, examination, copying and testing by the accused or his counsel any specifically identified exhibits to be used in the trial of the case . . . .

It should be noted initially that the District Attorney in this case indicated his willingness to provide defendant with "all photographs intended to be introduced at trial" and Judge Braswell included such photographs in his order allowing discovery. Likewise, the discovery order directed the District Attorney to allow defendant to inspect those reports relating to physical evidence obtained at the scene of the crime, which the State intended to introduce at the trial. It is apparent that Judge Braswell's discovery order was fully in compliance with G.S. 15-155.4 with respect to the items listed in defendant's request number 11.

[2]   We turn to the question of whether the denial of defendant's request for discovery and inspection of "the original notes of the arresting officers" was proper.

In his affidavit in support of his discovery motion, defendant argued that denial of this discovery request would be a violation of due process. This contention is based primarily on the case of *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194, which holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also, Moore v. Illinois,* 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562. One of the minimum requirements of *materiality* of evidence, in the context of discovery, is that the evidence sought might have affected the outcome of the trial. *United States v. Agurs,* _____ U.S. ___ _, 49 L.Ed. 2d 342, 96 S.Ct. 2392. Defendant explains his need for the police notes relating to the scene of the crime by stating that "[i]t may well be that knowledge of the scene would have enabled defense counsel to have more effectively cross-examined Blake so as to destroy his credibility with the jury." We are not convinced that defendant has met the "favorable character" and "materiality" tests fashioned by *Brady.* Moreover, we believe that defendant's due process argument is overcome when measured by the rule set forth in *Moore v. Illinois, supra,* to wit: "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Accord: State v. Goldberg, supra.*

[3]   Discovery under G.S. 15-155.4 is limited to exhibits which are "specifically identified" and which are "to be used in the trial of the case." The notes taken by investigating police officers relating to the house on Scoggins Street were not exhibits to be used in the trial. *See State v. Macon,* 276 N.C. 466, 173 S.E. 2d 286. Nor were these particular notes specifically identified as required by the statute. *See State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326. "Defendant was not entitled to the granting of his motion for a fishing expedition nor to receive the work product of police or State investigators." *State v. Davis, supra.* Thus, defendant had no right to inspect the notes of the investigating police officers under G.S. 15-155.4.

We note the current expression of public policy with respect to this type of discovery, contained in G.S. 15A-904. It

is there stated that the present criminal discovery statute "does not require the production of reports, memoranda, or other internal documents made by the solicitor, law-enforcement officers, or other persons acting on behalf of the State in connection with the investigation or prosecution of the case . . . . "

We do not attempt to discuss the remaining portions of defendant's sweeping and all-encompassing notice. Suffice it to say that the affidavit filed in support of the motion contained conclusory statements unsupported by any showing that the evidence sought by discovery was favorable to defendant or met the test of materiality.

Judge Braswell's ruling on defendant's motion for discovery was in compliance with constitutional and statutory requirements. We, therefore, overrule this assignment of error.

Defendant next assigns as error the denial of his pretrial motion that the State provide funds for the employment of a private investigator.

The narrow question presented by this assignment of error has not been decided by this Court. We, therefore, turn to other jurisdictions for guidance.

In *United States ex rel. Smith v. Baldi,* 344 U.S. 561, 97 L.Ed. 549, 73 S.Ct. 391, the United States Supreme Court considered the question of whether an indigent was entitled to the appointment of an expert witness to assist in his defense. There, the court stated: "We cannot say that the State has that duty by constitutional mandate." However, the holding in this case clearly indicating that the Federal Constitution does not require that expert witnesses or investigators be supplied to indigent defendants in criminal cases at State expense, was soon beclouded by the now well-recognized holdings that all defendants in criminal cases shall enjoy the right to effective assistance of counsel and that the State must provide indigent defendants with the basic tools for an adequate trial defense or appeal. *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792; *Avery v. Alabama,* 308 U.S. 444, 84 L.Ed. 377, 60 S.Ct. 321; *Britt v. North Carolina,* 404 U.S. 226, 30 L.Ed. 2d 400, 92 S.Ct. 431; *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296, *cert. denied,* 409 U.S. 1047, 34 L.Ed. 2d 499, 93 S.Ct. 537.

Some jurisdictions interpret the cases guaranteeing effective assistance of counsel to require the State to furnish expert assistance to an indigent defendant at State expense. *Greer v. Beto*, 379 F. 2d 923; *McCollum v. Bush*, 344 F. 2d 672; *United States ex rel. Robinson v. Pate*, 345 F. 2d 691; *People v. Watson*, 36 Ill. 2d 228, 221 N.E. 2d 645. On the other hand, other courts follow the holding of *Baldi* and adhere to the view that the Constitution creates no right in an indigent to demand that the State pay for expert assistance in his defense. *Watson v. Patterson*, 358 F. 2d 297, *cert. denied*, 385 U.S. 876, 17 L.Ed. 2d 103, 87 S.Ct. 153; *Utsler v. Erickson*, 315 F. Supp. 480, *cert. denied*, 404 U.S. 956, 30 L.Ed. 2d 272, 92 S.Ct. 319; *Houghtaling v. Commonwealth*, 209 Va. 309, 163 S.E. 2d 560, *cert. denied*, 394 U.S. 1021, 23 L.Ed. 2d 46, 89 S.Ct. 1642; *State v. Superior Court of Pima County*, 2 Ariz. App. 458, 409 P. 2d 742.

Our research does not reveal that the United States Supreme Court has reconsidered its decision in *Baldi*, and we adhere to the holding in that decision. However, we do not interpret *Baldi* to obviate the doctrine of "fundamental fairness" guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution. *United States ex rel. Robinson v. Pate, supra; State v. Taylor*, 202 Kan. 202, 447 P. 2d 806; *People v. Watson, supra; Corbett v. Patterson*, 272 F. Supp. 602.

We find the language in *State v. Taylor, supra,* particularly persuasive. There the Supreme Court of Kansas considered and rejected defendant's contention that he had been denied effective assistance of counsel because he was not provided with a fingerprint expert at the State's expense. In so deciding the court, in part, stated:

> In the absence of statute the duty to provide such [expert witness] may arise and be exercised because of an inherent authority in courts to provide a fair and impartial trial as guaranteed by Section ten of the Kansas Bill of Rights and the due process clause of the United States constitution. . . .

> . . . In the absence of statute a request for supporting services must depend upon the facts and circumstances of each case. Therefore it must rest in the sound discretion of the trial court. [Citations omitted.]

. . . Mere hope or desire to discover some shred of evidence when not coupled with a showing the same is reasonably available and necessary for a proper defense does not support a claim of prejudicial error.

We are aware that our General Assembly has enacted legislation providing expert services to an indigent defendant. G.S. 7A-454 provides:

The court, *in its discretion,* may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State. [Emphasis ours.]

Similarly, G.S. 7A-450(b) provides:

Whenever a person, under the standards and procedures set out in this sub-chapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the *other necessary expenses of representation.* . . . [Emphasis ours.]

The language contained in these statutes is consistent with the rule that appointment of experts lies within the discretion of the trial judge. *In re Moore,* 289 N.C. 95, 221 S.E. 2d 307.

[4] We conclude that our statutes and the better reasoned decisions place the question of whether an expert should be appointed at State expense to assist an indigent defendant within the sound discretion of the trial judge. We adopt that rule. However, we feel that the appointment of an investigator as an expert witness is a matter *sui generis.* There is no criminal case in which defense counsel would not welcome an investigator to comb the countryside for favorable evidence. Thus, such appointment should be made with caution and only upon a clear showing that specific evidence is reasonably available and necessary for a proper defense. Mere hope or suspicion that such evidence is available will not suffice. For a trial judge to proceed otherwise would be to impede the progress of the courts and to saddle the State with needless expense. *See State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572, decided this day.

[5] In instant case, counsel made no showing as to the reasonable availability of any evidence necessary for a proper defense. Defendant had the benefit of a favorable discovery order and

the testimony of his client makes it obvious that he was aware of all persons who could shed light on the happenings of the night of 20 July 1974. His motion was, in effect, a request for a State-paid fishing expedition. No abuse of discretion on the part of the trial judge has been shown.

[6] By this assignment of error defendant also contends that the refusal of his request for a private investigator at State expense is a denial of equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

The equal protection clause of the Fourteenth Amendment prevents a state from making arbitrary classifications which result in invidious discrimination. It "does not require absolute equality or precisely equal advantages." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 36 L.Ed. 2d 16, 93 S.Ct. 1278. In this case the State has imposed no arbitrary barriers which hinder or impede defense counsel's investigation or preparation of his case. There has merely been a refusal to provide defendant with an additional defense tool which is available to wealthier persons accused of crime. It was recognized in *Griffin v. Illinois,* 351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585, which defendant cites in support of his argument, that this circumstance alone does not amount to a denial of equal protection by the State:

> . . . Of course a State need not equalize economic conditions. A man of means may be able to afford the retention of an expensive, able counsel not within reach of a poor man's purse. Those are contingencies of life which are hardly within the power, let alone the duty, of a State to correct or cushion. (Frankfurter, J., concurring in the judgment.)

[7] Defendant further contends that the State has made an arbitrary and unconstitutional distinction between indigent defendants represented by court-appointed counsel and those represented by a public defender in those districts where such an office has been established. He argues that since the services of an investigator are available to those defendants represented by a public defender, the refusal of his request for similar assistance denies him equal protection of the laws.

G.S. 7A-468 provides that "[e]ach public defender is entitled to the services of one investigator, to be appointed by the defender to serve at his pleasure." We interpret this statute to

place the services of an investigator at the disposal of each public defender, to be used by him whenever, *in his discretion,* a particular case indicates the need therefor. As we have indicated above, the statutory plan established in G.S. 7A-454 and G.S. 7A-450 vests in the discretion of the trial court the decision of whether an investigator is a "necessary expense" of representation in the case of a defendant with court-appointed counsel. We believe that these two statutory schemes for providing the services of an investigator to indigent defendants are substantially equivalent. *See Mason v. Arizona,* 504 F. 2d 1345, *cert. denied,* 420 U.S. 936, 43 L.Ed. 2d 412, 95 S.Ct. 1145. In neither case is a defendant entitled to an investigator at State expense upon demand. In both instances he is entitled to a State-appointed investigator when he has made a showing of need sufficient to convince a public official, in the exercise of his discretion, that those services are necessary to a fundamentally fair trial. There is then no real distinction between indigent defendants represented by a public defender and those with court-appointed counsel with respect to the availability of State-provided investigative assistance. We, therefore, hold that the denial of defendant's motion for the appointment of an investigator did not violate his constitutionally guaranteed rights to equal protection of the laws.

This assignment of error is overruled.

[8] Defendant argues that the trial judge's denial of his challenge for cause of Juror Harry D. Woods constituted prejudicial error.

On the *voir dire* examination of the prospective juror, he stated that he worked with the brother of the State's chief prosecuting witness, Kenneth Earl Blake. He further stated that he was friendly with several law enforcement officers and that he felt uncomfortable about serving on the jury. In response to the court's questions the prospective juror said that he had formed no opinion about the case that would prevent him from giving defendant a fair trial; that he did not know defendant nor the codefendant Kenneth Earl Blake; and that his acquaintance with Blake's brother would not prevent him from basing his verdict solely upon the evidence presented at trial and the applicable law. He further stated that he would require proof of guilt beyond a reasonable doubt before returning a verdict of guilty and that his friendship with police officers (not in-

volved in the investigation of this case) would not prevent him from giving defendant a fair trial. He explained that his discussion of the case with Blake's brother concerned only the question of whether charges had been brought against codefendant Blake. He never discussed the evidence in the case.

"It is provided by G.S., 9-14, that the judge 'shall decide all questions as to the competency of jurors,' and his rulings thereon are not subject to review on appeal unless accompanied by some imputed error of law." *State v. DeGraffenreid,* 224 N.C. 517, 31 S.E. 2d 523. *Accord: State v. Watson,* 281 N.C. 221, 188 S.E. 2d 289, *cert. denied,* 409 U.S. 1043, 34 L.Ed. 2d 493, 93 S.Ct. 537. We find no error of law or abuse of discretion in the trial judge's ruling denying the defendant's challenge for cause. We, therefore, overrule this assignment of error.

[9]   Defendant next argues that the trial judge erred by admitting into evidence the testimony of the witnesses Laney and Cleveland.

Prior to introduction of evidence defendant moved that all State's witnesses be sequestered. The court ordered that Kenneth Earl Blake be sequestered and "as to police officers and technical witnesses the court will not order them sequestered." At the time of this ruling, neither the trial judge nor defense counsel knew that the witnesses Laney and Cleveland would be called by the State. There is also evidence to the effect that the district attorney was not certain, at this time, that these witnesses would be called. The record discloses that the challenged witnesses were in court at the time the State's chief witness Kenneth Earl Blake testified.

[10, 11]   Neither statute nor common law requires the State to furnish a defendant with the names and addresses of all the witnesses the State intends to call. *State v. Davis, supra;* G.S. 15A-901, *et seq. See particularly,* Official Commentary following G.S. 15A-903. Moreover, it is firmly established that the sequestration of the witnesses is a matter within the trial judge's discretion and his ruling thereon is not reviewable absent a showing of abuse of that discretion. *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839; *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512; 1 Stansbury's North Carolina Evidence § 20 (Brandis Rev. 1973).

We note that during the argument of this motion defense counsel admitted that his central objection to the admission of

this testimony was that he was not prepared to cross-examine the witnesses. The trial judge then stated that he would allow the witnesses to testify but would permit defense counsel to prepare for cross-examination of the witnesses overnight and that he would require the State to furnish defendant with any criminal record of the witnesses that the State might have in its possession. The record does not reveal that defense counsel asked for any further extension of time to prepare for cross-examination.

Under these circumstances no abuse of discretion or substantial prejudice to defendant is made to appear. This assignment of error is overruled.

[12] Defendant contends that the trial judge erroneously denied his challenge to the jury as constituted because the district attorney arbitrarily and systematically excluded all black males by the use of peremptory challenges. We reject this contention.

This assignment of error is squarely controlled by our holding in *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222. We quote from that case:

Defendants next contend that their rights under the Fourteenth Amendment to the United States Constitution were violated by the systematic exclusion of blacks from the trial jury. In *State v. Cornell*, 281 N.C. 20, 187 S.E. 2d 768 (1972), we said:

"If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon the defendant to establish it. [Citations omitted.] . . .

\*    \*    \*

"A person has no right to be indicted or tried by a jury of his own race or even to have a representative of his race on the jury. He does have the constitutional right to be tried by a jury from which members of his own race have not been systematically and arbitrarily excluded. [Citations omitted.]"

The basis for this assignment of error lies in the fact that all prospective black jurors were peremptorily challenged by the district attorney, and that both defendants were blacks. There is no suggestion in the record that the district attorney had previously followed practices which

prevented blacks from serving on the juries in his district. The United State Supreme Court has squarely ruled against the contentions here urged by defendants. In *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824 (1965), the Court, in part, stated:

" . . . The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor thereby subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. . . .

\* 　　 \* 　　 \*

" . . . But defendant must, to pose the issue, show the prosecutor's systematic use of peremptory challenges against Negroes *over a period of time. . . .* " [Emphasis ours.]

Defendants have failed to make out a *prima facie* case of arbitrary or systematic exclusion of blacks from the jury. This assignment of error is overruled.

[14] Defendant assigns as error the ruling of the trial judge in denying his motion in arrest of judgment and to set aside the verdict as to the charge of kidnapping.

Prior to the rewrite of G.S. 14-39, effective 1 July 1975, kidnapping was defined as the unlawful taking and carrying away of a human being against his will by force, threats or fraud. *State v. Dix,* 282 N.C. 490, 193 S.E. 2d 897; *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115, *cert. denied,* 404 U.S. 1023, 30 L.Ed. 2d 673, 92 S.Ct. 699.

G.S. 14-17 provides:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, *robbery, kidnapping,* burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death. . . . [Emphasis ours.]

**[13]**   The Bill of Indictment in this case was drawn in the form prescribed by G.S. 15-144 and is therefore sufficient to support a verdict of guilty of murder in the first degree if the jury found beyond a reasonable doubt that defendant killed deceased with malice and after premeditation and deliberation *or* in the perpetration of a robbery or a kidnapping. *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238; *State v. Moore,* 284 N.C. 485, 202 S.E. 2d 169.

In this case, the underlying felony of kidnapping would have supported a verdict of murder in the first degree under the felony-murder statute since there was no break in the chain of events leading from the initial felony of kidnapping to the shooting which caused the death of Howard Ellis. In other words, the homicide and the kidnapping were parts of a series of acts which formed one continuous transaction. *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666; 40 Am. Jur. 2d *Homicide* § 73, p. 367.

In *State v. Thompson, supra,* the trial judge submitted the charge of first-degree murder on the felony-murder theory where there had been a killing perpetrated during a felonious breaking and entering and larceny. The charges of felonious breaking and entering and felonious larceny were also submitted to the jury as separate charges. The jurors returned verdicts of guilty on all charges and in the murder case the judgment pronounced imposed a sentence of imprisonment for life. In the felonious breaking and entering case and in the felonious larceny case, separate judgments were pronounced imposing prison sentences of ten years to run consecutively.

Arresting the judgments in the breaking and entering and the larceny cases, this Court in part stated:

> . . . When a person is convicted of murder in the first degree no separate punishment may be imposed for any lesser included offense. Technically, feloniously breaking and entering a dwelling is never a lesser included offense of the crime of murder. However, in the present and similar factual situations, a cognate principle applies. Here, proof that defendant feloniously broke into and entered the dwelling of Cecil Mackey, to wit, Apartment # 3, 3517 Burkland Drive, was an essential and indispensable element in the State's proof of murder committed in the perpetration of the felony of feloniously breaking into and

entering that particular dwelling. The conviction of defendant for felony-murder, that is, murder in the first degree without proof of malice, premeditation or deliberation, was based on a finding by the jury that the murder was committed in the perpetration of the felonious breaking and entering. In this sense, the felonious breaking and entering was a lesser included offense of the felony-murder. Hence, the separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment. If defendant had been acquitted in a prior trial of the separate charge of felonious breaking and entering, a plea of former jeopardy would have precluded subsequent prosecution on the theory of felony-murder. . . .

\*    \*    \*

. . . For the reasons stated above with reference to the felonious breaking and entering count in the separate bill of indictment, the felonious larceny was, under the circumstances of this case, a lesser included offense of the felony-murder, in the special sense above mentioned.

*Accord: State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214.

In instant case the trial judge submitted the charge of first-degree murder upon the theory of felony-murder upon a finding by the jury beyond a reasonable doubt that the murder was committed in the perpetration of an armed robbery or upon a finding by the jury beyond a reasonable doubt that defendant killed deceased with malice and after premeditation and deliberation. In this connection the court, in part, charged:

. . . Now, I instruct you, members of the jury, that for you to find the defendant guilty of first degree murder, either the State must prove beyond a reasonable doubt that the defendant Tatum unlawfully killed the deceased Ellis while perpetrating or attempting to perpetrate the felony of robbery with a firearm, or the State must prove beyond a reasonable doubt that the defendant Tatum unlawfully killed the deceased Ellis with malice and with premeditation and deliberation.

[14]   *Thompson* is distinguishable from this case. In *Thompson* the judgments were arrested as to charges which were used as the underlying felonies to prove felony-murder. On the other hand, it is clear that the offense of kidnapping was here sub-

State v. Tatum

mitted to the jury as a separate and distinct offense and not as a basis for a possible finding by the jury that deceased was killed during the perpetration of the felony of kidnapping. Obviously kidnapping is not a lesser-included offense of murder. Neither was the kidnapping charge an essential or indispensable element in the State's proof of felony-murder. If defendant had been acquitted in a former trial of the charge of kidnapping, a plea of former jeopardy would have been of no avail in the prosecution of murder as here submitted.

The trial judge correctly denied defendant's motion to arrest judgment and set aside the verdict on the charge of kidnapping.

[15] Defendant next attacks the imposition of the death penalty in North Carolina. In *Woodson v. North Carolina*, ____ U.S. ____, 49 L.Ed. 2d 944, 96 S.Ct. 2978, the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Sup. 1975), the statute under which defendant was indicted, convicted and sentenced to death. Therefore, by authority of the provisions of 1973 Sess. Laws, c. 1201, § 7 (1974 Session), effective 8 April 1974, a sentence of life imprisonment is substituted in lieu of the death penalty in this case. We, therefore, do not deem it necessary to discuss this assignment of error.

This case is remanded to the Superior Court of Durham County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first-degree murder of which defendant has been convicted; and (2) that in accordance with this judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish to the defendant and his attorney a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the trial.

Death sentence vacated.