STATE OF NORTH CAROLINA v. LUTHER RAY WILSON, JR.

No. 180A83

(Filed 5 June 1984)

1. **Constitutional Law § 28; Homicide § 31.3— trial for first degree murder —discretion of district attorney—no denial of equal protection**

   A defendant tried for first degree murder was not denied his equal protection rights by the district attorney's exercise of discretion in determining who would be prosecuted for first degree murder and thereby be subject to the death penalty where defendant's allegations and evidence failed to show that the district attorney's decision to prosecute him for first degree murder and seek the death penalty was based upon "an unjustifiable standard such as race, religion, or other arbitrary classification."

2. **Constitutional Law § 28; Homicide § 31.3— trial for first degree murder—consideration of wishes of victim's family**

   It is not impermissible for the district attorney to consider the wishes of the victim's family as one factor in determining which defendants will be prosecuted for first degree murder and thereby subjected to the death penalty.

3. **Constitutional Law § 28; Homicide § 31.3— determination to try for first degree murder—lack of written guidelines**

   The district attorney's lack of written guidelines for determining who will be charged and prosecuted for first degree murder does not violate a defendant's right to equal protection of the laws.

4. **Constitutional Law § 31— indigent defendant—denial of funds for private investigator**

   The trial court did not err in the denial of defendant's request for the appointment of a private investigator at State expense based upon the bare allegation that defense counsel did not have enough time to interview all potential witnesses since defendant's allegation did not amount to a clear showing that specific evidence was reasonably available or necessary for a proper defense.

5. **Constitutional Law § 30— no obstruction of access to witnesses by district attorney**

   The evidence was insufficient to establish that the district attorney obstructed access by defendant's attorney to two witnesses so as to require sanctions in the form of excluding the testimony of the witnesses at trial where one witness was instructed by the district attorney that she did not have to speak with defendant's attorney unless she wanted to do so, and where defense counsel was told by a detective at the jail that he could not talk with the second witness, who was in jail, unless he obtained the permission of the district attorney.

State v. Wilson

6. **Criminal Law § 96 — withdrawal of incompetent evidence**

The admission of incompetent testimony by three witnesses concerning the character and arrest record of a defendant who did not testify was not prejudicial error where the trial court sustained defense counsel's objections to such testimony and gave a curative instruction admonishing the jury not to consider it.

7. **Criminal Law § 86.8 — impeachment of witness — specified criminal acts — exclusion as harmless error**

Although defense counsel should have been permitted to ask a State's witness on cross-examination whether he had obtained money by passing forged checks, the exclusion of such testimony could not have improperly influenced the verdict and was thus not prejudicial error.

8. **Criminal Law § 87.1 — leading questions**

The trial judge did not abuse his discretion in permitting the State to ask some arguably leading questions of two State's witnesses.

9. **Criminal Law § 89.3 — prior statement of witness — admissibility for corroboration**

The trial court did not err in permitting an officer to read into evidence a prior statement of a witness in order to corroborate his testimony where the record shows that whenever the officer started to read portions of the statement which were not corroborative of the witness's prior testimony and defendant entered a timely objection, the trial judge stopped the officer's testimony and excluded those portions of the statement which were not corroborative.

10. **Criminal Law § 102.8 — comment on defendant's failure to testify — no prejudicial error**

Even if the prosecutor's argument to the jury, "That's something no one here can answer except the defendant," constituted an impermissible reference to defendant's failure to testify at trial, it was not so extreme or so clearly calculated to prejudice the jury that the trial judge should have *ex mero motu* instructed the jury to disregard the remark, and whatever error there may have been was cured by the trial judge's instructions to the jury which emphasized the presumption of innocence of the defendant and the State's burden of proving its case beyond a reasonable doubt.

APPEAL by defendant from the judgment and sentence entered by the *Honorable Thomas W. Seay, Jr., Judge Presiding,* at the 8 November 1982 Criminal Session of Superior Court, RANDOLPH County. Heard in the Supreme Court 14 March 1984.

*Rufus L. Edmisten, Attorney General, by Elizabeth C. Bunting, Assistant Attorney General, for the State.*

*Charles T. Browne, for defendant-appellant.*

FRYE, Justice.

Defendant was charged in bills of indictment, proper in form, with the armed robbery and murder of Leonard Alexander Teel on or about 22 October 1981. Upon defendant's plea of not guilty, a jury found defendant guilty of robbery with a firearm, guilty of murder in the first degree based upon the felony-murder rule, and not guilty of murder in the first degree based upon premeditation and deliberation. After a sentencing hearing, the jury recommended that defendant be sentenced to life imprisonment on the conviction of murder in the first degree. Thereafter, Judge Seay arrested judgment on defendant's conviction of robbery with a firearm because that felony conviction was used as the basis for finding defendant guilty of murder in the first degree. Pursuant to the jury's recommendation, Judge Seay sentenced defendant to life imprisonment.

Pursuant to N.C. Gen. Stat. § 7A-27(a) (1981), defendant appeals his conviction of murder in the first degree and the sentence imposed thereon as a matter of right.

I.

Defendant seeks a new trial, assigning as error: the trial court's denial of certain pre-trial motions; the trial court's alleged erroneous rulings made during the course of his trial; the trial court's signing of the judgment and commitment; and, the trial court's denial of his motion for appropriate relief. After carefully reviewing all of the defendant's assignments of error, we have found none sufficient to upset the jury verdict in this case or the judgment and commitment entered thereon by the trial judge.

The State's evidence, primarily circumstantial, tended to show the following:

The decedent, Leonard Alexander Teel, was last seen alive by his son, Frank Teel, on 22 October 1981. Mr. Teel had visited his son's farm in Asheboro and left his son's house at approximately 5:00 p.m., apparently headed home.

On that same day, defendant and Jeffery Sealy were riding around Randolph County together. After Mr. Sealy and defendant had discussed the possibility of defendant attempting to get a job with Mr. Teel, by whom Mr. Sealy had previously been employed,

Mr. Sealy drove the defendant to the Teel residence. Upon arrival at the Teel residence, defendant, who was wearing a brown leather jacket, got out of the car and stated that he was going to inquire about a job. Defendant instructed Mr. Sealy to pick him up in thirty minutes. Mr. Sealy then departed the scene and went to visit some friends.

Gwinn Miller, who lived behind Mr. Teel, testified that on 22 October 1981 she was working in her engraving shop behind her house. She was startled and frightened by the sudden appearance of a white man wearing a black toboggan and a "brown leathery jacket" who walked past her house and disappeared into the woods. About ten minutes later, Mrs. Miller and her son observed the same man walking near her driveway with a ski mask pulled over his face and a "long gun in his left hand." Mrs. Miller called the sheriff's department.

Eugene Craven, also a neighbor of Mr. Teel, testified that his home was broken into during the late afternoon hours of 22 October 1981. A .22 semi-automatic Hi-Standard pistol, a few bicentennial quarters and two or three watches were stolen.

Approximately thirty minutes after Mr. Sealy had left the defendant at the Teel residence, he returned to the same general area and picked up the defendant in front of a local church. Defendant told Sealy that he had killed "old man Teel." As Sealy and the defendant were driving across the Deep River Bridge, defendant put some items in his toboggan and then threw the toboggan over the bridge. Subsequently, defendant gave Sealy a .22 semi-automatic Hi-Standard pistol and a lady's wristwatch.

Two days later, on 24 October 1981, Frank Teel went to visit his father. Upon arrival at his father's home, he noticed that the screen of the outside door had been cut, the back door was ajar, and the night latch on the back door had been broken. As he entered the house, Frank Teel observed his father's body lying on the floor near the refrigerator. He observed three bullet wounds in his father's chest, and he immediately knew that his father was dead.

A subsequent search of the crime scene, by various law enforcement officers, led to the discovery of four .22 caliber cartridge casings and one live round of .22 caliber ammunition. As a

result of the ensuing police investigation, a .22 semi-automatic Hi-Standard pistol was received from William Routh and traced through a chain of sellers to Mr. Sealy. Additionally, approximately two weeks after the murder of Mr. Teel, an underwater recovery team discovered a Harrison Richardson .22 caliber revolver, which had belonged to the deceased, in the water beneath the Deep River Bridge.

An autopsy revealed that the decedent had one gunshot wound in the head and four gunshot wounds in the chest and upper abdomen area. The examining physician stated that the cause of death was multiple gunshot wounds to the head, chest and abdomen.

A firearms expert from the State Bureau of Investigation testified that the bullet casings discovered at the scene of the crime were fired from the .22 semi-automatic Hi-Standard pistol apparently stolen from Mr. Craven. He also stated that the five bullets removed from the decedent's body could have been fired from the same gun, but they were too decomposed for him to be able to make that determination.

Two witnesses, a former female friend of defendant and a former prison cellmate of defendant, testified that on different occasions defendant told them that he had broken into a man's house with the intention of robbing him, and subsequently had to kill him after the man pointed a gun at him.

No evidence was presented by defendant.

## II.

Defendant first assigns as error the trial court's denial of his motion to bar prosecution for murder in the first degree. Defendant contends that the district attorney has unbridled discretion in determining who will be prosecuted for murder in the first degree and thereby subject to the death penalty. He argues that this discretionary power "amounts to a denial of due process and equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution." Defendant also argues that "he was the only person to be tried for his life in Randolph County within recent memory." Therefore, defendant contends that the district attorney's decisions are arbitrary.

In support of his contentions, the defendant presented evidence at a pretrial hearing that the district attorney's office in the Nineteen-B Judicial District did not have a written policy concerning which defendants would be charged and prosecuted for murder in the first degree. Defendant's evidence showed that during the administration of District Attorney Garland N. Yates, in eight out of nine cases where the defendant had been charged with murder in the first degree (exclusive of defendant's case), the defendant was subsequently allowed to plead guilty to a lesser-included offense or the defendant had been tried on a lesser-included offense. Defendant contends that his case was treated differently because the victim's family wanted him to be tried for murder in the first degree and subject to the death penalty.

During the pretrial hearing, Mr. Yates testified that no written guidelines existed as to which defendants would be charged and prosecuted for murder in the first degree and thereby subject to the death penalty. However, he stated that the various facts and circumstances of each case were determinative in deciding that question. Additionally, in response to a question posed by defense counsel concerning why the death penalty was being sought against defendant, Mr. Yates responded, "Mr. Browne, I'm trying him for first degree murder. I consulted with the family. It's their feeling that they want to pursue first degree murder. Only if the family wanted a plea to second degree murder would it be possible for that plea to be entered." Mr. Yates also stated that he always, if possible, consulted with the victim's family to consider their feelings about the case. However, he stated that the wishes of the family were only one of many factors that he and his staff considered. Based primarily on the above evidence, defendant asserts that the State should have been barred from prosecuting him for murder in the first degree. We disagree.

In *State v. Spicer*, 299 N.C. 309, 261 S.E. 2d 893 (1980), this Court addressed similar arguments relating to the discretionary powers of the district attorney. In *Spicer*, the defendant alleged that in other cases where the prosecuting witness indicated that he or she did not desire to have the case prosecuted, the district attorney had dropped the charges. However, the defendant contended that in his case, the district attorney would not drop the charges against him, even though the prosecuting witnesses in-

dicated that they did not want to prosecute the case. Therefore, defendant Spicer claimed that he was being denied equal protection of the laws.

In *Spicer*, this Court recognized that the district attorney may not, "during the exercise of his discretion, transcend the boundaries of the Fourteenth Amendment's guarantee of equal protection." *Id.* at 312, 261 S.E. 2d at 895. However, this Court stated:

> District attorneys have wide discretion in performing the duties of their office. This encompasses the discretion to decide who will or will not be prosecuted. In making such decisions, district attorneys must weigh many factors such as 'the likelihood of successful prosecution, the social value of obtaining a conviction as against the time and expense to the State, and his own sense of justice in the particular case.' Comment, *The Right to Nondiscriminatory Enforcement of State Penal Laws*, 61 Columbia L. Rev. 1103, 1119 (1961). The proper exercise of his broad discretion in his consideration of factors which relate to the administration of criminal justice aids tremendously in achieving the goal of fair and effective administration of the criminal justice system.
>
> . . . .
>
> Even if all other cases had been dismissed, defendant has still not sufficiently alleged a denial of equal protection. A defendant must show more than simply that discretion has been exercised in the application of a law resulting in unequal treatment among individuals. He must show that in the exercise of that discretion there has been intentional or deliberate discrimination by design. *Oyler v. Boles, supra; Edelman v. California*, 344 U.S. 357, 97 L.Ed. 387, 73 S.Ct. 293 (1953); *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 62 L.Ed. 1154, 38 S.Ct. 495 (1918).

*Id.* at 311-12, 261 S.E. 2d at 895-96. Additionally, in *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 2d 446 (1962), a case which challenged, *inter alia*, the allegedly selective enforcement of West Virginia's habitual criminal statute on equal protection grounds, the United States Supreme Court stated that in order to allege grounds supporting a finding of a denial of equal protection, it must be stated "that the selection was deliberately based upon an

unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 456, 82 S.Ct. at 506, 7 L.Ed. 2d at 453.

[1, 2]  Based upon the foregoing, it is quite clear that defendant has failed to meet his burden in this case. Defendant's allegations and evidence fail to show that the district attorney's decision to prosecute him for murder in the first degree and seek the death penalty was based upon "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id. See also State v. Lawson,* 310 N.C. 632, 314 S.E. 2d 493 (1984). We find nothing impermissible about the district attorney's consideration of the wishes of the family as *one factor* in determining which defendants will be prosecuted for murder in the first degree and thereby subjected to the death penalty.

[3]  We also find that the district attorney's lack of written guidelines for determining who will be charged and prosecuted for murder in the first degree does not violate defendant's right to equal protection of the laws. As is quite apparent, every murder case and every defendant are different. Neither the federal constitution, our state constitution, nor the statutory or case law of this State *require* that district attorneys establish such guidelines.

Basically, all the defendant has shown in this case is that the district attorney has exercised his discretion concerning the application of the law which has resulted in different cases being treated differently. Such a result necessarily follows from the exercise of a discretionary power. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler,* 368 U.S. at 456, 82 S.Ct. at 506, 7 L.Ed. 2d at 453. Defendant's assignment of error is rejected.

III.

[4]  Defendant contends that the trial court erred by denying him funds to hire a private investigator. In support of his contention, he argues that indigent defendants in other counties have access to private investigators. Defendant also states that due to the number of legal issues involved in his case, defense counsel did not have enough time to interview all potential witnesses who might have been essential in providing him an adequate defense.

The trial court properly denied defendant's request for the appointment of a private investigator at State expense based on the bare allegations made by defendant. Under the settled case law of North Carolina, the appointment of an expert assistant, a private investigator in the instant case, is necessary "only upon a showing by the defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that the defendant will not receive a fair trial." *State v. Williams*, 305 N.C. 656, 670, 292 S.E. 2d 243, 252-53 (1982), *reh'g denied*, 103 S.Ct. 839 (1983); *See also State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976). As stated in *Tatum*, "[m]ere hope or suspicion that such evidence is available will not suffice." *Tatum*, 291 N.C. at 82, 229 S.E. 2d at 568. Defendant's allegations do not amount to a clear showing that specific evidence was reasonably available or necessary for a proper defense. Therefore, the trial court properly denied defendant's request for funds to hire a private investigator.

IV.

[5] Defendant assigns as error the trial court's denial of his motion for sanctions against the State because the district attorney allegedly obstructed his attorneys' access to two State witnesses. As sanctions, defendant attempted to have the testimony of the two witnesses excluded. Now, since both witnesses' testimony was admitted, defendant seeks a new trial.

"[A] prosecutor has an implicit duty not to *obstruct* defense attempts to conduct interviews with *any* witnesses; however, a reversal for this kind of professional misconduct is only warranted when it is clearly demonstrated that the prosecutor affirmatively instructed a witness not to cooperate with the defense." *State v. Pinch*, 306 N.C. 1, 12, 292 S.E. 2d 203, 214-15 (1982), *reh'g denied*, 103 S.Ct. 839 (1983) (emphasis in original); *See also State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied*, 440 U.S. 984 (1979).

In the instant case, one of the State's witnesses, Sheila Wilson, was instructed by the district attorney that she did not have to speak with the defendant's attorney, unless she wanted to do so. This instruction by the district attorney was permissible.

*See Mason,* 295 N.C. at 588, 248 S.E. 2d at 244. We note that Ms. Wilson did eventually confer with defense counsel.

The other witness, Jeffery Sealy, was incarcerated at the Randolph County Jail when defendant's attorneys went to the jail to see him. A detective at the jail told defendant's attorneys that they could not talk with Mr. Sealy unless they obtained the permission of the district attorney. The detective testified that he told defendant's attorneys to obtain the permission of the district attorney on his own volition and not because the district attorney had given him any instructions concerning Mr. Sealy's visitors. The detective also testified that he told defendant's attorneys to contact the district attorney because Mr. Sealy's attorney was out of town and he knew that Mr. Sealy's attorney did not want Mr. Sealy to talk to them. The defendant's attorneys were unable to contact the district attorney on that day. Therefore, they were unable to talk with Mr. Sealy.[1]

The defendant's evidence does not show that the district attorney, or anyone acting pursuant to his instructions, affirmatively instructed any witnesses not to cooperate with the defendant's attorneys. The evidence was clearly insufficient, standing alone, to establish an obstruction of access to either witness sufficient to impose sanctions in the form of excluding their testimony at the trial of the instant case. *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203 (1982), *reh'g denied,* 103 S.Ct. 839 (1983); *State v. Mason,* 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied,* 440 U.S. 984 (1979). This assignment of error is rejected.

## V.

[6] Defendant contends that statements made by three witnesses for the State concerning his character and arrest record were so prejudicial that his motion for a mistrial should have been granted, especially since he did not testify at trial. During the course of the trial the witnesses testified as follows: Roscoe Light testified that he had seen defendant "two days after he had gotten out of prison"; Sheila Wilson testified that she and the

---

1. The record evidence does not show whether defense counsel attempted on another occasion to interview Mr. Sealy. However, based upon the arguments of counsel to the judge during the consideration of this motion, it appears that no other attempts were made.

defendant "went to pawn some of the stuff he [the defendant] had stolen"; and Randy Currie, a former cellmate of the defendant, testified that defendant "was kind of upset about a whole lot of things and he got to telling me, you know, about he got charged with three counts of breaking and entering." After each witness had made the above statements, defense counsel's objections to the testimony were immediately sustained, and the trial judge promptly gave a curative instruction admonishing the jury not to consider that evidence. However, despite the trial judge's instructions, defendant contends that the cumulative effect of the incompetent evidence prejudiced the minds of the jurors.

We find the following language in *State v. Aycoth*, 270 N.C. 270, 154 S.E. 2d 59 (1967) instructive on this point:

'In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the Court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict. In some instances because of the serious character and gravity of the incompetent evidence and the obvious difficulty in erasing it from the mind, the Court has held to the opinion that a subsequent withdrawal did not cure the error. But in other cases the trial courts have freely exercised the privilege, which is not only a matter of custom but almost a matter of necessity in the supervision of a lengthy trial. Ordinarily where the evidence is. withdrawn no error is committed.' *S. v. Strickland*, 229 N.C. 201, 207, 49 S.E. 2d 469, 473; *S. v. Green*, 251 N.C. 40, 46, 110 S.E. 2d 609, 613, and cases cited. This is also the rule when unresponsive answers of a witness include incompetent prejudicial statements and the court on motion or *ex mero motu* instructs the jury they are not to consider such testimony. *S. v. Brown*, 266 N.C. 55, 145 S.E. 2d 297. Whether the prejudicial effect of such incompetent statements should be deemed cured by such instructions depends upon the nature of the evidence and the circumstances of the particular case. *S. v. Aldridge*, 254 N.C. 297, 118 S.E. 2d 766.

*Id.* at 272-73, 154 S.E. 2d at 60-61.

Since the defendant did not testify at trial, evidence concerning his bad character was not admissible. *See State v. Robbins*, 287 N.C. 483, 214 S.E. 2d 756 (1975), *death sentence vacated*, 428

U.S. 903 (1976); *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974), *death sentence vacated,* 428 U.S. 903 (1976). Therefore, the trial judge properly sustained defendant's objections to the witnesses' testimony.

After carefully reviewing the circumstances under which the incompetent evidence was heard by the jury, along with all of the other evidence presented in this case, we have concluded that the prejudicial effect, if any, of the incompetent evidence was cured by the trial judge's instructions. *State v. Smith,* 301 N.C. 695, 272 S.E. 2d 852 (1981); *State v. Pruitt,* 301 N.C. 683, 273 S.E. 2d 264 (1981); *Robbins,* 287 N.C. at 488-89, 214 S.E. 2d at 760-61. We are convinced that the testimony of each witness, even when considered cumulatively, did not in any way affect the outcome of the trial. In short, that there is no reasonable possibility, that had the incompetent evidence not been heard by the jury, a different result would have been reached at the trial. *See* N.C. Gen. Stat. § 15A-1443(a) (1983). "Verdicts and judgments are not to be lightly set aside, nor for any improper ruling which did not materially and adversely affect the result of the trial." *State v. Bovender,* 233 N.C. 683, 690, 65 S.E. 2d 323, 330 (1951). The trial court correctly denied defendant's motion for a mistrial.

VI.

**[7]** Defendant next alleges that reversible error was committed when the trial judge sustained an objection to a question asked of Mr. Sealy by defense counsel on cross-examination concerning whether he had obtained money by passing forged checks.

A witness in a trial may be impeached and discredited by cross-examination. *State v. Dawson,* 302 N.C. 581, 276 S.E. 2d 348 (1981); *State v. Waddell,* 289 N.C. 19, 220 S.E. 2d 293 (1975), *death sentence vacated,* 428 U.S. 904 (1976). In order to impeach the witness' credibility, the witness may be asked whether he has committed specified criminal acts or has been guilty of identifiable specific acts of degrading conduct. *Dawson,* 302 N.C. at 584-85, 276 S.E. 2d at 351; *Waddell,* 289 N.C. at 26, 220 S.E. 2d at 298. However, it is within the trial judge's discretion to control the scope of cross-examination, and his rulings thereon will not be disturbed unless it is shown that the verdict is improperly influenced thereby. *Id.* at 26, 220 S.E. 2d at 298-99.

Although we agree that the question asked by defense counsel was proper under the circumstances, it does not appear that the trial judge's ruling influenced the verdict in this case. Thus, the error was not prejudicial.

## VII.

[8]　We also hold that the trial judge did not err by allowing the State to ask some arguably leading questions of two State witnesses. Neither the content of the questions nor their number were excessive. "A presiding judge has wide discretion in permitting or restricting leading questions, and his rulings will not be disturbed when the evidence is otherwise competent, absent a showing of abuse of discretion." *State v. Williams*, 304 N.C. 394, 418, 284 S.E. 2d 437, 452 (1981), *cert. denied*, 456 U.S. 932 (1982). We find nothing in the questions or answers to show an abuse of discretion.

## VIII.

[9]　During the course of the trial, Detective Charles Ratcliff was allowed to read into evidence a prior statement of witness Randy Currie in order to corroborate his testimony. Defendant contends that portions of the statement were not corroborative of Mr. Currie's testimony and, therefore, the uncorroborative portions of the statement should have been excluded. The trial transcript shows that whenever Detective Ratcliff started to read portions of the statement which were not corroborative of Mr. Currie's prior testimony and the defendant entered a timely objection, the trial judge stopped the testimony of Detective Ratcliff and excluded those portions of the statement which were not corroborative. This practice was approved by this Court in *State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977). We find no error in following it here.

## IX.

[10]　Defendant also contends that the trial court erred in denying his motion for mistrial based upon his allegation that the prosecutor made an impermissible reference to his failure to testify at trial. Defendant argues that the following statement made by the District Attorney during closing arguments was a comment upon his failure to testify:

This is the gun of Mr. Teel. This was the gun that was taken off of him, off of his body. This was the gun that was thrown in the river. Why the defendant threw this gun in the river? I have no idea why he threw that gun in the river. His statement to Randy Currie would indicated that he thought he threw the other gun in the river. I don't know. That's something no one here can answer except the defendant. How did the murder take place? That's another question.

Defendant did not object to the prosecutor's argument at the time the above statements were made. His objection was made in the form of a motion for mistrial at the close of the district attorney's argument to the jury. This motion was denied. The trial judge's offer to give a curative instruction to the jury was rejected by the defendant. The defendant's closing argument and the trial judge's charge to the jury emphasized the presumption of innocence of the defendant and the State's burden of proving its case beyond a reasonable doubt. Assuming, *arguendo*, that the prosecutor's statement could be construed as an impermissible comment on defendant's failure to testify, it was not so extreme or so clearly calculated to prejudice the jury that the trial judge should have *ex mero motu* instructed the jury to disregard the remarks. Whatever error there may have been, it was cured by the trial judge's instructions to the jury. *See State v. Hardy*, 299 N.C. 445, 263 S.E. 2d 711 (1980). This assignment of error is rejected.

## X.

According to defendant, the last assignments of error asserted by him were raised for preservation purposes. Those assignments of error are: (1) that the trial court erred in denying defendant's motion to dismiss; (2) that the trial court erred in denying defendant's motion for appropriate relief; and, (3) that the trial court erred in signing the judgment and commitment.

Defendant's motion to dismiss was properly denied. There was substantial evidence presented at trial of each essential element of the crime charged and of the defendant being the perpetrator of the crime. *State v. Hinson*, 310 N.C. 245, 311 S.E. 2d 256 (1984); *State v. Tysor*, 307 N.C. 679, 300 S.E. 2d 366 (1983). Additionally, no prejudicial error occurred during defendant's trial which would provide a basis for granting his motion for ap-

propriate relief. Accordingly, the trial judge did not err in signing the judgment and commitment.

Defendant received a fair trial free from prejudicial error.

No error.