JAKE SWARTZ ET AL. V. STATE OF NEBRASKA.

FILED OCTOBER 9, 1931. No. 27840.

*Scott & Scott,* for plaintiffs in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Goss, C. J.

Jake Swartz and Dick Swartz complain that they were erroneously convicted and sentenced on the charge of shooting Harold Swartz with intent to kill.

They argue that the court erred in allowing the state to bring into the presence and view of the jury, over their objection, certain bloodstained garments that were worn by Harold Swartz when he was shot. The clothing was identified and testimony was received concerning it during the presentation of the state's case in chief. When offered in evidence just before the state rested, it was objected to on behalf of defendants as immaterial and not tending to prove or disprove any of the issues. The objection was sustained by the court without argument or comment. The record shows no undue display of these garments and we find no prejudice against the defendants in respect thereto.

Defendants assert error in that the court did not order the witnesses to remain segregated after they had testified. Before the trial began the defendants invoked "the rule for the exclusion of witnesses." The proceedings show merely that the court said "Sustained." What directions the court gave the witnesses and the sheriff at

the time appears at the conclusion of the testimony of the first two witnesses for the state, when counsel for defendants stated he had been informed that, after witnesses had testified, they were allowed to mingle with other witnesses who had not testified and to relate the nature of their testimony, and he asked that they be separated and not allowed to mingle. The court said: "No order was made that the sheriff should segregate the witnesses after they testified; none was asked; and no showing that the witnesses have done anything improper." There appears no ruling. The defendants excepted. Apparently the request for "exclusion of the witnesses" made before the trial began was interpreted and acted upon by the court as meaning to exclude each witness from the courtroom until after he had testified. In the absence of any showing of prejudice to the defendants, we cannot say that the court abused his discretion or that the defendants were in fact prejudiced because the court did not keep all the witnesses segregated after they testified as well as before.

The chief point stressed by defendants in their brief and oral argument is that the state failed to make specific proof of their intent to kill Harold Swartz.

Jake Swartz and Dick Swartz, father and son, lived on a farm seven miles southwest of McCook. The home of Harold Swartz, aged twenty, is seven miles southeast of Trenton, but he had been staying at Arthur Donelson's, near the Swartz home, for about ten days, shucking corn. Mrs. Donelson, his aunt, is his father's sister. The defendants are his uncle and cousin. There was evidence that Jake Swartz was about six feet three inches tall, and weighed about 240 pounds; that Dick Swartz, aged 23, was six feet one and a half inches tall, and weighed about 180 pounds; and that Harold Swartz is about five feet three inches tall, and weighed about 130 pounds.

On the forenoon of November 21, 1930, about 10 o'clock, Harold took a 22 caliber repeating rifle and went hunting. His expedition took him upon the farm of Jake Swartz. The latter testified that he saw Harold hunting there and spoke to him, whereupon Harold reviled him, and

he ordered Harold to get off the place and stay off. Harold testified that on this hunt in the morning he did not at any time see Jake Swartz. On this morning trip Harold went over to the section line on the west side of Jake's land. Thence he went north and visited the lands and homes of others north of the east and west road. He went past Jake's house, which faces this road from the south, and visited a home east of Jake's farm. Thence he went south upon the farm and down to the creek, where he said he found the track of a coon on the snow and followed it along the creek. Shortly after this an altercation took place, participated in by Jake, Dick, and Harold, around which this case centers. Harold testified that, while he was following this track, a shot was fired at him from the east and a bullet went past him; he saw Dick had a gun leveled at him; Dick fired another shot at him and he began to run. Jake Swartz and another cousin, George Swartz, were also there on the east side of the creek, and the witness was about 600 feet away when Dick shot; the witness intended to run down around the bend in the creek and go to Donelson's, but Dick headed him off and he ran southwest; Dick, who had a shotgun, overtook him, and the witness, fearing he might be shot in the back, stopped and turned; Dick stuck the shotgun against his stomach and Harold knocked it away and it went off; Dick hit him on the head with his fist and then knocked him down by hitting him on the head with the stock end of the shotgun and struck him several times with it while he was down; as he was down Dick tried to get hold of the barrel of Harold's gun and it went off; and after that he was dizzy and everything was dark; Jake came up about this time and shot Harold.

The wooden stock of the shotgun was shattered and broken almost completely in two at the point of the handgrip. When Harold was examined by a surgeon in McCook later in the day, the surgeon testified to a wound made on his head by some instrument; that the blow was at the time developing a paralysis on that side of his head; and to a gunshot wound appearing to have been made by a

22 caliber bullet, entering the chest just below the collar bone, with the point of exit about four inches to the right of the median line in the back; it passed through the apex of the right lung and through the shoulder blade.

Both Jake and Dick testify to quite a different state of facts. Their testimony indicates that Harold was the aggressor, that he shot Dick in the chest and arm, and when Jake then called to him to put down his gun he turned and shot Jake in the thigh or hip, and then fired two more shots at Jake, but missed him and loaded his gun again. Jake testified as to events at this point: "By that time I made up my mind to put the boy out of commission, and I aimed to shoot him in the shoulder."

Without further extending the recital of the evidence, it suffices to say that the defendants made out a strong case of self-defense, which was carefully submitted to the jury in the court's instructions. It was a question of fact peculiarly in the province of the jury to decide whether the defendants or Harold Swartz told the truth as to what occurred at the time of the shooting affray.

Jake having testified that it was not his intention to kill Harold but merely to prevent him from doing further harm, the defense argues that, not only has the intent not been shown by the state, but that it has been disproved by the defense.

It seems that in cases like this, where intent is an essential element of a crime, proof of such intent is indispensable to support a conviction. *Botsch v. State,* 43 Neb. 501; *Ward v. State,* 58 Neb. 719; *Clary v. State,* 61 Neb. 688; *Garrett v. State,* 110 Neb. 118; 16 C. J. 81. While the foregoing authorities state this to be the rule they also state: "It (the intent) may be gathered or drawn from all the evidence, facts, and circumstances of the case, inclusive of the act, and is a matter of fact for the consideration and decision of the jury." *Ward v. State, supra.* "The intent with which an act is done is inferable from the act itself, and from the facts and circumstances surrounding it." *Clary v. State, supra.* "But it is sufficient in such cases to prove facts from which the specific in-

tent may be inferred." 16 C. J. 81. "It has often been held that, while the specific intent is essential, its existence may be inferred from the circumstances, under the usual rule that every sane man is presumed to intend the usual and probable consequences of his acts." 16 C. J. 116.

So, we are of the opinion the intent was sufficiently proved and no error was made by the court in submitting that question to the jury. Nor do we think the verdict is opposed to physical facts shown to exist, nor in flat contradiction of recognized physical laws, as argued on behalf of defendants.

We have covered most of the questions argued. Other errors are assigned and some of them are briefly mentioned in the argument. We have examined the transcript and evidence carefully and find no reversible error.

Considering all the circumstances in the case, we are of the opinion that the sentence of seven years is excessive. It is our judgment that the ends of the law and the good of society will be served by reducing the sentence to three years, which is hereby done, under the authority of section 29-2308, Comp. St. 1929. As thus modified, the judgment of the district court is affirmed.

AFFIRMED: SENTENCE REDUCED.