STATE OF NORTH CAROLINA v. ALFONZA LE-VEGAS MASON

No. 1

(Filed 17 October 1978)

1. **Constitutional Law § 30— right to interview prospective witnesses—no obstruction by prosecution**

An assertion unsupported by evidence by defendant's counsel that various officers had told him that they could not discuss the case with him because they had been told not to discuss it was insufficient to show that defendant was denied his right to attempt to interview any witnesses he desired, including prospective State witnesses, free from obstruction by the prosecution.

2. **Criminal Law § 91.6— continuance to examine evidence—denial proper**

The trial court did not err in denying defendant's motion for continuance made that he might have time to investigate certain materials submitted and expected to be submitted to him by the State pursuant to his motion for discovery, since defendant was given ample time and opportunity to investigate the evidence in question; he had the cooperation of the State; he had full knowledge of all facts essential to any investigation; and there was no showing that defendant was unduly prejudiced in any manner by the judge's denial of his motion.

3. **Criminal Law § 98.2— sequestration of witnesses—time of making motion as basis for denial—error not prejudicial**

The trial court erred in denying defendant's motion to sequester the witnesses made at the beginning of the trial on the ground that defendant had made the motion at the wrong time, but such error was not prejudicial where defendant offered no reason for his motion to sequester; the record disclosed no reason for sequestration; and nearly all the witnesses testified to different facts and circumstances of the crimes, and each account given was sufficiently different from the others so as to indicate an absence of collusion or the parroting of another's testimony.

4. **Criminal Law § 89.8— cross-examination of accomplice—expected punishment —questions improper**

The trial court did not err in sustaining the State's objections to questions put to defendant's accomplice on cross-examination with respect to the nature of the sentence which he might receive for his participation in the crimes, since the questions did not concern a promise of or the accomplice's just expectation of pardon or parole as the result of his testifying for the State, but instead apparently asked of the witness his understanding of the laws concerning parole in this State, and, as such, called for the legal knowledge of a lay witness.

5. **Criminal Law § 89.10— impeachment—question about street gang operations improper**

The trial court properly sustained the State's objection to a question, asked for impeachment purposes, as to whether the witness had been involved in "street gang operations in New York," since the question did not refer to a

particular act of misconduct on the part of the witness and thus was not a proper question for impeachment purposes.

6. **Criminal Law § 157.1— witness's excluded answers not placed in record—no error**

The trial court did not err in refusing to permit defendant to put into the record the responses which a witness would have given had he been permitted to testify, since the court had correctly sustained the State's objections to the questions, and since defendant made his request after the witness had stepped down.

7. **Criminal Law § 115— judge's statement about jury instructions—no instruction on lesser offense—no prejudice**

The trial judge's ambiguous statement, made just prior to the jury arguments, as to what offenses he would charge on was not prejudicial to defendant, though the court referred only to second degree rape but subsequently instructed on first degree rape, since defendant was indicted for first degree rape and arraigned on first degree rape at the beginning of trial; all the evidence showed that the rape was consummated by the use of a deadly weapon; defendant contended that he did not commit the rape at all; and, even if counsel did believe that the judge would not instruct on first degree rape, such belief could not have affected the content of his argument to the jury.

8. **Criminal Law § 138.9— sentence—credit for time served**

Defendant was entitled to credit for pretrial time spent in custody under the provisions of G.S. 15-196.1 through -196.4.

9. **Criminal Law § 50.2— bloodstains—nonexpert opinion evidence admissible**

A police officer and an accomplice to a rape were properly permitted to identify stains on the back seat of defendant's car as bloodstains.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Bailey, J.,* at the August 1977 Session of DURHAM Superior Court.

Defendant was tried and convicted of first degree rape, kidnapping, and three counts of armed robbery. The three armed robbery convictions were consolidated for judgment, and defendant was sentenced to three consecutive life sentences for robbery, first degree rape and aggravated kidnapping.

Evidence for the State may be summarized as follows: On 28 June 1977 Nancy Ann Oakley, prosecutrix, was manager of the Cricket Inn on Hillandale Road in Durham. At about 11:30 p.m. that evening, Tony Binion, an employee of the motel, reported to Ms. Oakley the presence of two black men in the parking lot. Ms. Oakley, accompanied by David Womack and Ronnie McSwain, two motel guests, went out to the lot to investigate. As they ap-

proached, the shorter of the two men pointed a shiny revolver at the trio and threatened to kill them. The three were ordered to turn around. Upon doing so, Ms. Oakley was blindfolded by the shorter man and pushed into the back seat of a black and gold Buick Riviera. Her watch, ring and flashlight were taken from her. The shorter man also put the gun to McSwain's back, and took from him his room key, pocket change, and a billfold containing a twenty dollar bill and several singles. One of the men took Womack's room key from his pocket. Both Womack and McSwain identified the defendant as the shorter man who held the gun on them. Tony Binion, an employee of the motel, also identified the defendant as one of the men.

Ms. Oakley was driven by the men some distance to a service road off Morreene Road. There she was forced to remove her clothes and was raped by both men. Ms. Oakley testified that she did not see the face of either man.

Anthony Hunter testified that he was with defendant on the night of 28 June 1977 in defendant's black and gold Riviera. Both he and defendant pulled into the Cricket Inn parking lot and were in the process of breaking into a soda machine when approached by a woman and two men. Defendant drew a gun on the group, went through their pockets, and put the woman in the back seat of the car. Some minutes later Hunter rode off with defendant to a spot where both men raped the woman. Hunter testified that he had pled guilty to second degree rape and kidnapping.

Other evidence for the State tends to show that defendant was stopped at 2:00 a.m. on the morning of 29 June in an automobile answering descriptions given by the various victims. A nickel-plated .32-caliber revolver was found under the driver's seat, and a twenty dollar bill and four singles were found on defendant's person. A lady's wristwatch was found on the turn signal of the car and stains appearing to be the effects of blood were found in the back seat. A thumbprint lifted from the interior of the automobile matched a print taken from Ms. Oakley. At the place where the rape allegedly occurred the investigating officer found a pair of lady's pantyhose, McSwain's billfold, property McSwain identified as the contents of his billfold, and a motel key for McSwain's room, number 154.

The defendant testified in his own defense. He said that he did not rape Ms. Oakley and in fact had never seen her prior to

trial. At the time of the offense he was in Chapel Hill with a girl, Delores Wiggins. He and his attorney had attempted to locate Ms. Wiggins but could not find her.

Other facts pertinent to decision will be set out in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney Thomas F. Moffitt for the State.*

*Richard N. Weintraub for defendant appellant.*

MOORE, Justice.

[1] Under his first assignment of error defendant contends that the trial court erred in denying defendant's motion requesting the court to direct the State to rescind any orders or suggestions made to potential or actual witnesses to refuse to discuss the case with defendant's attorney. The record discloses that a hearing was held on this motion a week prior to trial. At the hearing, defendant's attorney stated that police officers and detectives had refused to discuss the case with him, and had told him that they had been instructed not to discuss it. The district attorney stated at the hearing that no such orders had been given to the officers, and that officers had been told that they could discuss the case with defendant's attorney if they wished. After hearing, defendant's motion was denied.

Several federal cases hold that a defendant has the right to attempt to interview any witness he desires, including prospective State witnesses, free from obstruction by the prosecution. *Gregory v. United States,* 369 F. 2d 185 (D.C. Cir. 1966); *Byrnes v. United States,* 327 F. 2d 825 (9th Cir. 1964); *McCabe v. State of North Carolina,* 314 F. Supp. 917 (M.D.N.C. 1970); *Coppolino v. Helpern,* 266 F. Supp. 930 (S.D.N.Y. 1967). In addition, ABA Standards Relating to the Prosecution Function, § 3.1(c), says: "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give to the defense information which he has the right to give." *See* ABA Standards Relating to the Administration of Criminal Justice, p. 88 (1974). This requirement that a prosecutor not instruct prospective

witnesses not to talk with defense counsel has been implicitly recognized by this Court in another context. In *State v. Covington*, 290 N.C. 313, 343, 226 S.E. 2d 629, 649 (1976), the Court said: " . . . Defendant had the right to examine proposed State's witnesses in order to amplify the clearly stated charge contained in the bill of indictment. . . ."

The rule, however, does not impose any obligation upon a prosecutor to disclose the identity of prospective witnesses. *See State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976). Nor does the duty prohibit a prosecutor from informing prospective State witnesses that they have the right to refuse to be interviewed. *United States v. White*, 454 F. 2d 435 (7th Cir. 1972). Finally, reversal on this ground requires a clear showing that the prosecutor instructed a witness not to cooperate with defendant. *United States v. White, supra.* In the present case the evidence is to the contrary. The district attorney stated at the hearing that he had given no instructions to any witnesses not to discuss the case with defendant's counsel. Defendant offered no evidence, by way of testimony or affidavit, that such instruction had been given. All we have is an assertion by defendant's counsel that various officers had told him they could not discuss the case because they had been told not to discuss it. Since there is nothing but this unsubstantiated claim in the record, defendant's assignment is held to be without merit.

[2]   Defendant next argues that the trial court erred in denying defendant's motion for continuance. On 12 August 1977, ten days prior to trial, defendant submitted a written motion requesting that his case be continued until 19 September 1977, in order that he might investigate certain materials submitted and expected to be submitted to him by the State pursuant to his motion for discovery. This motion was heard before Fountain, J., and that judge granted defendant a continuance of one week, but denied defendant's motion for any further continuance. Defendant orally renewed his motion for continuance on the first day of trial, arguing that he had first received certain fingerprint evidence that very day and required time to investigate it. After hearing arguments by both sides, the trial court denied defendant's motion.

A motion to continue is ordinarily addressed to the sound discretion of the trial court, and his ruling thereon will not be disturbed except upon a showing that he abused his discretion. However, when a motion to continue is based on a constitutional right, the question presented is a reviewable question of law. *State v. McFadden,* 292 N.C. 609, 234 S.E. 2d 742 (1977). Defendant contends that denial of his motion prevented him from exercising his Sixth Amendment right to effective assistance of counsel and his right to cross-examine State's witnesses. The question presented is therefore one of law rather than discretion. *State v. Brower,* 289 N.C. 644, 224 S.E. 2d 551 (1976).

Implicit in the constitutional guarantees of assistance of counsel and of confrontation of one's accusers and witnesses are the requirements that defendant's attorney have a reasonable time to investigate, prepare and present his defense. However, no set length of time is guaranteed, and whether a defendant is denied due process must be determined under the circumstances of each case. *State v. McFadden, supra; State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322 (1943).

In present case defendant was arrested on 29 June 1977 and was indicted on 5 July 1977. The record reveals that defendant's counsel was appointed sometime prior to 12 July 1977. His counsel made motion for discovery under G.S. 15A-901 et seq., and the State first produced materials in response to this motion on 10 August 1977, twelve days prior to trial. The week before trial defendant's counsel was given written notice of the fingerprint evidence the State intended to introduce, and was given oral notice regarding the location of the fingerprints, the type of prints taken, who took them, who processed them, and those who would testify. Defendant's counsel actually saw these items on Friday, three days prior to trial. What he did not see, because they were not available until the day of the trial, were photographic blowups of the prosecutrix's thumbprint and codefendant's palmprint. He did, however, see the prints from which the blowups were made at least three days prior to trial, and may have had the opportunity to see them even before then. Finally, defendant was aware of the fact that the State would try the case on 22 August, for his initial motion to continue the case beyond this date had been denied at least a week prior to trial.

Given these facts, we cannot see that defendant was denied the opportunity to prepare his defense. He was given ample time and opportunity to investigate these prints, he had the cooperation of the State, and he had full knowledge of all facts essential to any investigation. Additionally, there is no evidence in the record indicating that defendant was unduly prejudiced in any manner by the trial judge's denial of his motion. Defendant's assignment is hence without merit.

[3] Under his third assignment defendant argues that the trial court erred in denying his motion to sequester the State's witnesses, made at the beginning of the trial. The trial judge denied it, saying that it was not the time to make the motion. Though defendant concedes that sequestration of witnesses is a matter of the trial court's discretion, he contends that the denial of his motion amounts to a manifest abuse of discretion. Defendant argues that the grounds on which the trial judge denied his motion indicate that the trial judge refused to consider the motion on its merits; that this amounts to a refusal by the trial judge to use his discretion and thus to an abuse of such discretion.

It is the usual practice in this State, in both criminal and civil cases, to separate witnesses and send them out of the hearing of the court when request is made. 1 Stansbury, North Carolina Evidence § 20 (Brandis rev. 1973). Sequestration of witnesses is not, however, a matter of right, but is a matter of discretion on the part of the trial court, *State v. Cross*, 293 N.C. 296, 237 S.E. 2d 734 (1977); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972); *Annot.*, 32 A.L.R. 2d 358, and a denial of a motion to sequestrate will be reviewed only where there has been an abuse of discretion. *State v. Cross, supra.*

We have discovered no law which holds that a motion to sequester cannot be made after the jury panel is called into open court and just prior to the State's calling its first witness. A motion to sequester is not among those motions listed in G.S. 15A-952(b) which must be made at or before the time of arraignment. Hence, it would appear that the trial court's stated reason for denial of defendant's motion to sequester is inapposite. When, however, there is nothing in the record which would tend to indicate that the defendant was prejudiced by the refusal of the

trial court to exclude witnesses from the courtroom, any error will be held nonprejudicial. *Mitchell v. United States*, 126 F. 2d 550 (10th Cir. 1942), *cert. den.*, 316 U.S. 702, 86 L.Ed. 1771, 62 S.Ct. 1307 (1942). *See also Swartz v. State*, 121 Neb. 696, 238 N.W. 312; *Music v. Commonwealth*, 186 Ky. 45, 216 S.W. 116; *People v. Winchester*, 352 Ill. 237, 185 N.E. 580. In present case defendant offered no reason to the court for his motion to sequester. Furthermore, the record discloses no reason for sequestration. *Accord, State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970). Nearly all the witnesses testified to different facts and circumstances of the crimes, and each account given is sufficiently different from the others so as to indicate an absence of collusion or the parroting of another's testimony. The failure of the trial court to sequester witnesses could not thus have prejudiced the defendant. This assignment is therefore without merit.

Under Assignments Nos. 5-8, defendant contends that the trial court erred in sustaining State's objections to questions put to Anthony Hunter, an accomplice, on cross-examination. Defendant contends that this constitutes a denial of his constitutional rights to confront and cross-examine State's witnesses.

[4] Defendant first argues that the trial judge committed error by limiting his cross-examination of Hunter as to the nature of the sentence which he might receive for his participation in the crimes. During cross-examination of this witness, the following transpired:

"MR. WEINTRAUB: Did you make an arrangement—Is there an arrangement made as to what the largest sentence you could get would be?

MR. HUNTER: Yes.

Q. Could you tell us what that is?

A. Life imprisonment.

Q. One life imprisonment term, is that correct?

COURT: How many can you do?

MR. WEINTRAUB: Do you understand if you're sentenced to life imprisonment you can—

MR. STEPHENS: Objection.

COURT: Sustained.

MR. WEINTRAUB: Your Honor, I'd like to clarify that a person can do more.

COURT: Sustained. Sustained."

In *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971), Justice Branch, speaking for the Court, said:

"It is recognized that it is proper on cross-examination to test a witness as to bias concerning a promise of or his just expectation of pardon or parole as the result of his testifying for the State. *State v. Roberson,* 215 N.C. 784, 3 S.E. 2d 277. However, this rule must be applied in connection with the equally well recognized rule that the legitimate bounds of cross-examination are largely within the discretion of the trial judge, so that his ruling will not be held as prejudicial error absent a showing that the verdict was improperly influenced thereby. [Citation omitted.]"

Unlike questions posed to witnesses in *Chance* and *Roberson, supra,* the question put to witness Hunter in present case does not concern "a promise of or his just expectation of pardon or parole as the result of his testifying for the State." Instead, the question apparently asks of the witness his understanding of the laws concerning parole in this State. Since such question calls for the legal knowledge of a lay witness, it was proper for the trial judge, in his discretion, to sustain the State's objection to the question. *Accord, State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). This is a matter which defense counsel could more properly address in his argument to the jury.

[5] Under this same assignment defendant further argues that the trial court erred in sustaining the State's objection to a question, asked for impeachment purposes, concerning prior misconduct by this same witness. Defense counsel asked the witness: "Were you involved in what you call street gang operations in New York?" Counsel for the State objected, and this objection was sustained. Defendant correctly states the law when he argues that, for impeachment purposes, it is proper to ask a witness both questions concerning prior convictions and questions concerning

his prior *specific acts* of misconduct for which there has been no conviction. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). *See* 1 Stansbury, North Carolina Evidence §§ 43 and 111 (Brandis rev. 1973). A question referring to involvement in "street gang operations" does not, however, concern a *particular act* of misconduct, but rather is a general and oblique allusion to a class of activities. The trial judge thus acted well within the bounds of his discretion in sustaining the State's objection. The record does not disclose any attempt by defense counsel to rephrase his question such that it would focus on specific acts of misconduct by the witness. We can only interpret this failure as an indication that counsel abandoned this line of inquiry.

Defendant's next argument under this assignment is equally without merit since it concerns the sustaining of an objection to a clearly argumentative question asked of State's witness Hunter, after Hunter had responded "No" to two successive questions concerning whether he took his shirt off when he got into the car. The trial judge acted within his discretion by limiting this manner of cross-examination. *See* 1 Stansbury, North Carolina Evidence § 31 (Brandis rev. 1973); *In re Will of Kemp*, 236 N.C. 680, 73 S.E. 2d 906 (1953).

[6] Defendant finally argues under this assignment that he was prejudiced by the trial court's refusal to permit him to put into the record the responses witness Hunter would have given to the questions discussed under this assignment. Defense counsel's request to do so was made when the State had rested its case, after witness Hunter had stepped down and four subsequent witnesses had testified. Since we have held that the trial judge correctly sustained State's objections to these questions, the trial judge's refusal could not have prejudiced defendant. Furthermore, since the request was made after the witness had stepped down, the trial judge acted within his discretion in denying the request.

[7] At the close of all testimony, and just prior to the parties' arguments to the jury, the trial judge said to the attorneys: "For the information of you gentlemen, as to aggravated kidnapping, kidnapping, no lesser included; second degree rape, no lesser included; armed robbery, no lesser included. That will be the nature of the charge." After jury arguments, the trial judge instructed the jury on first degree rape, and the jury returned a verdict of first degree rape. Defendant argues that the trial court erred in

instructing on and in entering a judgment of guilt for first degree rape after having been advised that such charge would not be given to the jury. We disagree.

The trial judge's statement to the attorneys is ambiguous. It is not clear whether he was giving them an exhaustive listing of all offenses on which he would charge, or whether he was merely informing the lawyers as to the lesser degrees on which he would charge. If, at trial, defendant interpreted the statement as implying that there would be no instruction on first degree rape, there is nothing in the record which would indicate his confusion. Likewise, there is nothing in the record which would indicate prejudice. Defendant was indicted for first degree rape and he was arraigned on first degree rape at the beginning of trial. All the evidence shows that the rape was consummated by the use of a deadly weapon. Defendant made no motion for nonsuit on the charge of first degree rape. It is, in fact, apparent that defendant did not base his defense on the absence or nonuse of a deadly weapon. Defendant's testimony reveals that his defense was not that he did not use a weapon, but that he did not commit rape at all since he was not present when the crime occurred. This being his defense, even if counsel did believe that the judge would not instruct on first degree, such belief could not have affected the content of his argument to the jury.

Counsel for defendant failed to include in the record the jury arguments and the trial judge's instructions to the jury. The record does not show that defendant was confused by the judge's statement or that he objected to the judge's instructions on first degree rape. Defendant has therefore failed to carry his burden of showing that the alleged error was prejudicial. This assignment is overruled.

[8] Defendant next insists that the trial judge, in passing judgment, failed to give him credit for pretrial time spent in custody. Defendant is unquestionably entitled to this credit under the provisions of G.S. 15-196.1 through -196.4. This is, however, a matter for administrative action, as provided by G.S. 15-196.4, rather than a subject to be considered on this appeal.

[9] Ms. Oakley testified that after being raped by the defendant in the back seat of his car, she felt a wetness, which may have been blood, running down her legs. Dr. Lawrason testified that

Ms. Oakley had a laceration in the back of her vagina that was bleeding when he examined her shortly after the rape. Officer Hayes and Anthony Hunter, the accomplice, testified that they saw stains on the back seat of defendant's car. Officer Hayes said that the stains "appeared to be blood stains or some type stains." Hunter testified that he "saw some blood in the back seat."

Defendant contends that Hayes and Hunter, being lay witnesses, should not have been allowed to identify blood or bloodstains, this being a matter of lay opinion concerning scientific matters. There is no merit to this assignment. In *State v. Jones*, 291 N.C. 681, 231 S.E. 2d 252 (1977), Chief Justice Sharp, speaking for the Court, said:

> "The average layman is familiar with bloodstains; they are a part of common experience and knowledge. When a witness says he saw blood he states an opinion based on his observations, and most likely it would be exceedingly difficult for him to describe the details which led him to conclude that the stains were blood. When he testifies they looked like blood to him he has stated his conception. 'This Court has long held that a witness may state the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." Such statements are usually referred to as shorthand statements of facts.' *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E. 2d 178, 187 (1975). *See* 1 Stansbury's North Carolina Evidence § 125 (Brandis rev. ed. 1973). . . ."

This assignment is overruled.

Defendant has been convicted in a trial free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.