STATE OF NORTH CAROLINA v. BENNIE CARSELL WILHITE

STATE OF NORTH CAROLINA v. JOHN EDGAR RANKIN

STATE OF NORTH CAROLINA v. RALPH WAYNE RANKIN

No. 8118SC1236

(Filed 7 September 1982)

1. **Criminal Law § 43.4— photographs—wounds inflicted by third party—absence of prejudice**

    In a prosecution for rape and kidnapping, defendants were not prejudiced by the admission of three irrelevant photographs depicting minor cuts inflicted on the prosecutrix by a third party. G.S. 15A-1443(a).

2. **Criminal Law § 169.6— failure of record to show excluded testimony**

    When an objection to a specific question asked on cross-examination is sustained, the answer the witness would have given must be made part of the record or the propriety of the objection will not be considered on appeal.

3. **Rape and Allied Offenses § 4.3— rape victim shield statute—prostitution and other acts by prosecutrix**

    Evidence tending to show that the prosecutrix in a rape case had worked as a prostitute and that a witness had made the statement that eighteen men were seen waiting on a stairwell to visit the prosecutrix in her room was inadmissible under the rape victim shield statute, G.S. 8-58.6. Furthermore, testimony by a witness that he had seen the prosecutrix at a bar around 2:00 a.m. and that she left the bar with a "perfect stranger" was not evidence of behavior so distinctive and closely resembling defendants' version of their encounter with the prosecutrix so as to be admissible under G.S. 8-58.6(3) to prove consent.

4. **Criminal Law § 158— omission of matter from record—assignment of error not considered on appeal**

    An assignment of error to the trial court's refusal to allow defendant to examine a detective's handwritten statement taken during an interview of a rape victim will not be considered on appeal where defendant failed to have this statement placed in the record on appeal.

**5. Rape and Allied Offenses § 5— first degree rape—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of first degree rape where the prosecutrix testified that she was taken to an apartment and had sexual intercourse against her will with two codefendants; defendant then took her into the living room of the apartment and placed his gun on the window ledge near the couch; defendant then pushed her back on the couch and had intercourse with her; and she did not consent to have intercourse with defendant but did so because he had a gun and she was scared.

**6. Kidnapping § 1.1; Rape and Allied Offenses § 4.3— rape victim shield statute—inapplicability in kidnapping case**

A trial on a charge of kidnapping the prosecutrix for the purpose of committing the felony of rape is not a trial regarding a sex offense and therefore is not subject to the rape victim shield statute.

**7. Criminal Law § 86.8; Kidnapping § 1.1— kidnapping case—impeachment of victim—acts of prostitution**

The defendant in a prosecution for kidnapping for the purpose of committing the felony of rape was prejudiced when the trial court refused to permit defendant to impeach the credibility of the prosecutrix by cross-examining her about alleged acts of prostitution.

**8. Criminal Law § 92.1— defenses not antagonistic—consolidation of charges against multiple defendants**

The defenses of defendant and his two codefendants were not antagonistic because defendant testified at the trial and the two codefendants did not testify, and charges against the three defendants for kidnapping and rape were properly consolidated for trial in accordance with G.S. 15A-926(b)(2).

**9. Criminal Law § 73.2— testimony not hearsay**

A witness's testimony concerning statements allegedly made to her by the prosecuting witness was not inadmissible hearsay where the testimony was admitted solely to prove that the statements were made and not to prove the truth of the matters asserted.

Judge HEDRICK concurring in part and dissenting in part.

APPEAL by defendants from *Rousseau, Judge.* Judgments entered 2 April 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 5 May 1982.

The defendants Bennie Carsell Wilhite, John Edgar Rankin and Ralph Wayne Rankin were indicted on charges of first degree rape and kidnapping. From verdicts of guilty of first degree rape and kidnapping, and judgments imposing sixty to seventy year prison sentences, the defendants John and Ralph Rankin appeal. From a verdict of guilty of first degree rape and a judgment of imprisonment, defendant Bennie Wilhite appeals.

*Attorney General Edmisten, by Michael Rivers Morgan, Associate Attorney; Thomas B. Wood, Assistant Attorney General; John R. B. Matthis, Special Deputy Attorney General; and John F. Maddrey, Associate Attorney, for the State.*

*Alexander, Moore, Nicholson & Baynes, by E. Raymond Alexander, Jr., for defendant appellant Wilhite.*

*Moses & Murphy, by Pinkney J. Moses, for defendant appellant John Rankin.*

*Bowden & Bowden, by Joel G. Bowden, for defendant appellant Ralph Rankin.*

BECTON, Judge.

STATE'S EVIDENCE

On the evening of 30 November 1980, the prosecuting witness, age 16, was accompanied by Deborah Wilson, Kenny Birch and a man named Greg to the H & H Grill in Greensboro. The three defendants later entered the Grill. As the prosecuting witness was returning from the restroom, the defendant John Rankin touched her private parts. Defendant Ralph Rankin then grabbed her, kissed her, pulled a gun out, and asked if he could go home with her. The prosecuting witness said: "I told him I didn't care." Ralph then pointed the gun at her and threatened to harm her and her friends if she told any of them about their conversation. Fearing for the safety of her friends, the prosecuting witness returned to the booth and told her friends to leave. She then left the Grill with Ralph because he had threatened her with the gun.

The three defendants placed the prosecuting witness in the back of a car and drove to an apartment. Ralph took her into the apartment and told John to return in thirty minutes. Ralph then had sexual intercourse with her. When John Rankin returned to the apartment, he had intercourse with the prosecuting witness. Later defendant Wilhite knocked on the door of the bedroom at the apartment. He ordered the prosecuting witness into the living room and had sexual intercourse with her. John, who was still in the bedroom, then called the prosecuting witness. He threatened to shoot her in the head if she did not stop crying. John then had intercourse with her a second time in the bedroom.

Afterwards, the prosecuting witness either passed out or fell asleep. She was awakened when Gwendolyn Boswell entered the room and demanded to know what she was doing there. Ms. Boswell lunged toward the prosecuting witness with what appeared to be a razor. The prosecuting witness fled from the room to a nearby store where Ms. Boswell cut the prosecuting witness on her arm and legs. The prosecuting witness was taken to the hospital by the police, treated for her wounds, and released the same day. She testified that she did not consent to having sex with any of the defendants.

DEFENDANT'S EVIDENCE

The defendants John Rankin and Bennie Wilhite did not testify. Defendant Ralph Rankin testified that he saw the prosecuting witness at the H & H Grill during the early morning hours of 1 December 1980. He was acquainted with her prior to this date. Ralph further testified that he gave the prosecuting witness, his brother, John, and Bennie Wilhite a ride to the apartment on Asheboro Street. Ralph went home after dropping them off. He denied having sexual intercourse with the prosecuting witness or threatening her in any way.

The three defendants were represented by separate counsel, both at trial and on appeal. Their assignments of error are not the same in all respects, and each has filed a separate brief. We shall therefore discuss their appeals separately.

DEFENDANT WILHITE'S APPEAL

I

[1] During the presentation of the State's evidence, the trial court allowed the jury to view three photographs of the prosecuting witness. Defendant Wilhite argues in Assignment of Error No. 2 that these photographs were prejudicial and irrelevant since the wounds depicted therein were not inflicted by the defendants, but were rather inflicted by Gwendolyn Boswell. Assuming for purposes of discussion that the photographs were irrelevant, we conclude that their admission was harmless error. Further, the Court has examined these photographs and disagrees with defendant's contentions that they are highly inflammatory and prejudicial. These photographs depict only minor cuts. Pursuant to G.S. 15A-1443(a), defendant is required to show

prejudice by proving that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." Without the photographs, there was still sufficient evidence of each and every element of the crimes charged to support the jury's verdict. Defendant Wilhite's Assignment of Error No. 2 is without merit.

(The two co-defendants have also assigned error to the admission of these photographs. Our rationale for rejecting defendant Wilhite's assignment of error applies equally to the two co-defendants.)

II

By Assignment of Error No. 3, defendant Wilhite argues that the trial court erred in failing to admit evidence of the prosecuting witness' living conditions, past conduct, and general reputation and character. By this evidence, the defendant sought to attack the prosecuting witness' credibility and character. A close examination of the exceptions noted under this assignment of error reveals no error in the exclusion of such evidence.

[2] We first examine the cross-examination of the prosecuting witness during which the trial court sustained objections to the following questions: "Do you live with your mother, . . . ? When did you leave Deborah Wilson's house, . . . ? Did the State take you away from Miss Wilson's house, . . . ? Is your mother in court with you today?" The trial court also sustained an objection to the question posed to Detective Powell concerning whether the prosecuting witness worked. After each of these questions, the defendant failed to request that the prosecuting witness be allowed to answer for the record in the absence of the jury. "When an objection to a specific question asked on cross-examination is sustained, the answer the witness would have given must be made part of the record or the propriety of the objection will not be considered on appeal." *State v. Price,* 301 N.C. 437, 450, 272 S.E. 2d 103, 112 (1980). We do not speculate as to what the prosecuting witness' answers would have been. Nor do we perceive any error in the trial court's decision to sustain objections to the questions asked.

The remaining exceptions under Assignment of Error No. 3 relate to evidence of the prosecuting witness' sexual behavior.

Pursuant to G.S. 8-58.6, North Carolina's rape victim shield statute, the sexual behavior[1] of the victim of a rape or other sex offense is generally irrelevant and therefore inadmissible. The statute, however, lists four exceptions to this general rule. The third exception allows the admission of sexual behavior which

> [i]s evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented.

G.S. 8-58.6(b)(3). Evidence of sexual behavior cannot be introduced at trial until the trial court determines its relevancy. G.S. 8-58.6(c).

[3] Defendant Wilhite sought to present evidence which he contends falls under this third exception to the rape victim shield statute. First, defendant sought to question the prosecuting witness about her alleged relationship with a Mr. Marshall as his prostitute. Second, Deborah Wilson was cross-examined and asked about a statement she had allegedly made that, at one time, 18 men were seen waiting on the stairwell to visit the prosecuting witness in her room. The trial court sustained the State's objections to both questions. The defense later sought to present the testimony of Thomas Braswell. His testimony would have allegedly shown that he met the prosecuting witness at a bar, and

> [t]hat on the occasion he met this young lady, she left with a perfect stranger at 2:00 or 3:00 a.m. and that at a later point he had sex with the lady, and she made statements to him that she had sex for hire.

According to Braswell, the prosecuting witness also allegedly said "that she was put out of the house by her mother and had to live with Deborah Wilson for having sex with her stepfather." The trial court refused to allow Braswell to testify.

---

1. "As used in this section, the term 'sexual behavior' means sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial." G.S. 8-58.6(a).

We find no error in the exclusion of this evidence of the prosecuting witness' sexual behavior, because such evidence does not satisfy the requirements of G.S. 8-58.6(b)(3). Further, Braswell's statement that he had seen the prosecuting witness at a bar around 2:00 a.m. and that she left the bar with a "perfect stranger," is not evidence of behavior so distinctive and so closely resembling the defendants' version of the prosecuting witness' encounter with them as to prove consent. The defendants sought to persuade the jury that she met them at a bar early on the morning of 1 December 1980; and that she *willingly* left with them. However, there was uncontroverted evidence that the prosecuting witness was acquainted with at least two of the three defendants, and that at least one of them threatened her with a gun at the Grill. That the prosecuting witness may have been a prostitute or easy prey for Mr. Braswell does not prove she consented or that defendant Wilhite could have reasonably believed she consented to the encounter with him. In other cases this Court has upheld the trial court's exclusion of testimony showing a pattern of the prosecuting witness' sexual behavior which was merely similar to the defendant's alleged encounter with the prosecuting witness. *See State v. White*, 48 N.C. App. 589, 269 S.E. 2d 323 (1980), *State v. Smith*, 45 N.C. App. 501, 263 S.E. 2d 371, *disc. rev. denied*, 301 N.C. 104, --- S.E. 2d --- (1980). We find no error in the exclusion of the testimony assigned as error in Assignment of Error No. 3.

III

[4] Detective Powell testified from a statement taken during an interview of the prosecuting witness. The statement was initially taken in longhand by Detective Powell and was later typed. Detective Powell used the typed statement at trial. Defendant Wilhite requested to see the handwritten statement, and the trial court denied the request. He now assigns error to the trial court's action denying his request and cites *State v. McLean*, 294 N.C. 623, 242 S.E. 2d 814 (1978) as supporting authority. The *McLean* Court held that the trial court's refusal to allow the defendant to examine the rape victim's handwritten statement was harmless error. In the case *sub judice* we can only speculate whether the trial court's refusal to allow defendant to examine Detective Powell's handwritten statement was prejudicial error, since defendant failed to have this statement placed in the record for

appellate review. Therefore, we shall not consider this assignment of error.

## IV

[5] Defendant Wilhite also assigns error to the failure of the court to grant his motion to dismiss the charge of first degree rape. This error is based upon the State's alleged failure to show two essential elements of first degree rape. Wilhite argues that there was no showing that the prosecuting witness was forced into the act of intercourse or that his display of a gun at the time of the alleged intercourse placed her in fear. The trial court properly denied the motion to dismiss since there was sufficient evidence of these essential elements. The prosecuting witness testified that after she was taken to the apartment and after she had sexual intercourse against her will with defendants Ralph and John Rankin, defendant Wilhite began kissing her. He took her into the living room of the apartment and placed his gun on the window ledge near the couch. Wilhite then pushed her back on the couch and had intercourse with her. The prosecuting witness stated: "I didn't consent to have intercourse with him. I had intercourse with him at that time because he had a gun and I was scared." Her testimony compelled submission of the first degree rape charge to the jury.

## DEFENDANT JOHN RANKIN'S APPEAL

## I

The defendant John Rankin also assigned error to the trial court's failure to admit testimony of alleged acts of misconduct by the prosecuting witness. During the trial the defendant requested the court's permission to cross-examine the prosecuting witness about alleged acts of prostitution. In response to the trial court's inquiry about the specific acts of misconduct alleged, defense counsel said "she used to live with Mr. Marshall and . . . worked for Mr. Marshall as a prostitute." Defense counsel also told the trial court that "Mr. Marshall is in the Department of Corrections and will come and testify that he pimped her." Defendant later sought, through witness Thomas Braswell, to present other evidence suggesting that the prosecuting witness was a prostitute.

Defendant conceded that, pursuant to the rape victim shield statute, this evidence was inadmissible in the rape case. He argued, however, that evidence of acts of prostitution would be admissible for the purpose of impeaching the prosecuting witness' credibility in the kidnapping case. The State argued that this evidence was inadmissible under the rape victim shield statute. In denying the defendant's request, the trial court noted that the kidnapping was alleged to have been committed for the purpose of facilitating rape. We agree with defendant that he was prejudiced by the trial court's refusal to allow this cross-examination.

[6] North Carolina's rape victim shield statute does not exclude evidence that is otherwise admissible. The statute is merely a codification of this jurisdiction's rule of relevance as it applies to the sexual behavior of rape victims. *State v. Fortney*, 301 N.C. 31, 269 S.E. 2d 110 (1980). It declares that in a trial on charges of rape or other sex offenses[2] the "sexual behavior" of the complainant is irrelevant. A trial on the charge of kidnapping the prosecuting witness for the purpose of committing the felony of rape is not a trial regarding a sex offense and therefore is not subject to the rape victim shield statute.

[7] Evidence of acts of prostitution allegedly committed by the prosecuting witness was clearly relevant to impeach her credibility as to the kidnapping charge.

> The law is that a witness, including the defendant, in a criminal case, may be *cross-examined for purposes of impeachment* with respect to prior convictions of crime. (Citations omitted.) Under the general principle the witness may also be cross-examined about specific acts of misconduct and may be asked disparaging questions concerning collateral matters relating to his criminal and degrading conduct. (Citations omitted.)

*State v. Monk*, 286 N.C. 509, 517, 212 S.E. 2d 125, 132 (1975). The fact that the evidence of prostitution was inadmissible as to the rape charge would not prevent its admission for purposes of impeaching the prosecuting witness' credibility as to the kidnapping charge. The general rule is that "the incompetency for one pur-

---

2. The statute, itself, is captioned: "Restrictions on evidence in rape or sex offenses cases."

pose will not prevent its admission for other and proper purposes." Brandis On North Carolina Evidence, § 79 (Second Revised Edition 1982). We therefore hold that the defendant John Rankin was prejudiced when the trial court deprived him of his right to cross-examine the prosecuting witness about alleged acts of prostitution for Mr. Marshall.

The defendant further argues that he should have been allowed to place Thomas Braswell on the stand for purposes of impeaching the prosecuting witness' credibility. As previously noted, Braswell would have allegedly testified to the following:

> That on the occasion he met this young lady (the prosecuting witness), she left (the bar) with a perfect stranger at 2:00 or 3:00 a.m. and that at a later point he had sex with the lady, and she made statements to him that she had sex for hire.

From this testimony it is unclear whether Braswell himself paid the prosecuting witness for sex or whether he merely saw her leave the bar with a stranger and was later told that she had sex with this stranger. If the latter is the case, then Braswell's testimony was properly excluded because part of it is irrelevant and part calls for hearsay. If, however, Braswell's testimony would have been that he had sex with the prosecuting witness in exchange for money, then his testimony would have been admissible to impeach her credibility in the kidnapping case.

We take note of the rule which prohibits a party from contradicting a witness' prior denial of misconduct by introducing testimony of other witnesses. *State v. Monk.* The *Monk* Court, in explaining this rule, emphasized that the purpose of such cross-examination was to impeach the credibility of the witness and not to prove prior offenses.

Finally the defendant argues that he was deprived of his right to impeach the prosecuting witness' credibility when he was not allowed to question the witness Deborah Wilson as to whether she had become concerned when the prosecuting witness "had approximately 18 men waiting on the stairwell to visit her in her room." We hold that the court properly sustained the State's objection to this question since the question was not directed to, nor did it refer to an act of misconduct by, the prosecuting wit-

ness. *See State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied* 440 U.S. 984, 60 L.Ed. 2d 249, 99 S.Ct. 1797 (1979). The prosecuting witness had previously testified that some men had come to the house. She denied that she was "selling sex" to them.

For the failure of the trial court to allow the defendant John Rankin to impeach the prosecuting witness' credibility, by evidence of acts of prostitution allegedly committed by her, the defendant John Rankin is awarded a new trial on the kidnapping charge. We deem it unnecessary to discuss defendant's remaining assignments of error.

DEFENDANT RALPH RANKIN'S APPEAL

I

[8] Prior to trial the defendant Ralph Rankin objected to the joinder of the three defendants' cases for purposes of trial. He now argues that he was prejudiced by the joinder since his defense was antagonistic to, and different from, that of the other two defendants. At trial Ralph testified that he did not threaten the prosecuting witness nor have sexual intercourse with her on or about 1 December 1980. The other defendants chose not to testify. We disagree with defendant's contention that he was prejudiced by the other defendants' failure to take the stand. The defendants' cases were properly joined for trial in accordance with G.S. 15A-926(b)(2). Each defendant was charged with accountability for the offense of kidnapping, and the separate offenses of rape were part of a common scheme or plan. The fact that Ralph Rankin chose to testify and the other defendants did not, does not amount to antagonistic defenses. Assuming there were antagonistic defenses, severance still was not warranted.

> The test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial. G.S. 15A-927(c)(2). In a case where antagonistic defenses were urged as a ground for severance this Court said long ago, "Unless the accused suffered some apparent and palpable injustice in the trial below, this court will not interfere with the decision of the court on the motion for a severance." *State v. Finley*, 118 N.C. 1162, 1163, 24 S.E. 495, 496 (1896).

*State v. Nelson*, 298 N.C. 573, 587, 260 S.E. 2d 629, 640 (1979). The defendant has failed to show that he was denied a fair trial because of the consolidation. There was ample evidence offered by the State to support the convictions against all three defendants.

## II

[9] By Assignment of Error No. 4 defendant Ralph Rankin argues that the trial court erred in allowing the State's witness Deborah Wilson to give testimony concerning statements the prosecuting witness allegedly made to her. This evidence was not inadmissible hearsay. It was admitted solely to prove that the statements were made and not to prove the truth of the matters asserted. Ms. Wilson's testimony was also admissible for the purpose of corroborating the prior testimony of the prosecuting witness. *State v. Caddell*, 287 N.C. 266, 215 S.E. 2d 348 (1975).

## III

Defendant Ralph Rankin next argues, as did defendant Wilhite, that the trial court erroneously excluded the testimony of Thomas Braswell which allegedly tended to show a pattern of sexual behavior so distinctive and so closely resembling the defendants' version of the alleged encounter with the prosecuting witness as to prove that she consented to intercourse. This testimony was inadmissible for the reasons given in our discussion of defendant Wilhite's appeal. Furthermore, even had this testimony fallen under an exception to the rape victim shield statute, it would not have been admissible to bolster defendant Ralph Rankin's case. This defendant specifically denied that any act of intercourse took place. "Whether [the victim] lived in an 'environment of sexual immorality' or in a cloistered convent has no relevance to the issues in a case . . . where defendant denies that any act of intercourse or other assault took place. (Citations omitted.)" *State v. McLean*, 294 N.C. 623, 632, 242 S.E. 2d 814, 820 (1978).[3]

---

3. *McLean* was decided prior to the effective date of North Carolina's rape victim shield statute (G.S. 8-58.6), but has been cited with approval in the North Carolina Supreme Court's decision interpreting the statute. *See State v. Fortney*, 301 N.C. 31, 269 S.E. 2d 110 (1980).

IV

Ralph Rankin's final assignment of error goes to the trial court's instructions on the elements of first degree rape. We have carefully examined this portion of the charge and find no error.

Defendant Ralph Rankin does not argue on appeal, as did defendant John Rankin, that the trial court erred in excluding evidence of prior acts of misconduct—prostitution—as they relate specifically to the kidnapping charge. "To prevent manifest injustice" to defendant Ralph Rankin, we, pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, suspend Rules 10 and 28 and, for the reasons set forth in our discussion of John Rankin's pertinent assignment of error, award Ralph Rankin a new trial on the kidnapping charge.

The defendant Bennie Carsell Wilhite had a trial free of prejudicial error. The defendants John Rankin and Ralph Rankin are awarded new trials based on the trial court's failure to allow them to impeach the prosecuting witness' credibility in the kidnapping case.

As to defendant Bennie Carsell Wilhite

No error.

As to defendants John Rankin and Ralph Rankin

New trial on the kidnapping charges.

No error on the rape charges.

Judge HILL concurs.

Judge HEDRICK concurs in part and dissents in part.

Judge HEDRICK, concurring in part and dissenting in part.

As to the defendant Wilhite, I concur; as to the defendants· John Rankin and Ralph Rankin, with respect to the charge of first degree rape, I concur; however, as to defendants John Rankin and Ralph Rankin, with respect to the charge of kidnapping, I dissent.